154 S.W.3d 616 (2005)
Tuan Anh DANG, Appellant,
v.
The STATE of Texas.
No. PD-568-03.
Court of Criminal Appeals of Texas.
January 26, 2005.
*617 Mike DeGeurin, Houston, for Appellant.
Donald W. Rogers, Jr., Asst. District Atty., Houston, Matthew Paul, State's Atty., Austin, for State.

OPINION
PRICE, J., delivered the opinion of the Court, in which MEYERS, JOHNSONS, HOLCOMB, and COCHRAN, JJ., joined.
The appellant was involved in a robbery and murder at his father's machine shop when he was fifteen years old. During his trial for capital murder, several issues arose, including the voluntariness of his confession, two lesser-included offenses, the law of parties, and the law of conspiracy. At the close of the evidence during the guilt phase, the trial court limited closing arguments to twenty minutes per side. Defense counsel objected before his argument began and requested an additional three minutes when the twenty minutes was up. The appellant was found guilty of capital murder by a jury and sentenced to life imprisonment.
On direct appeal, the appellant argued that the trial court erred in limiting closing argument to twenty minutes. The Court of Appeals held that the trial court did not abuse its discretion in limiting closing argument to twenty minutes and affirmed the conviction.[1]
We granted the appellant's petition for discretionary review to determine whether the Court of Appeals erred in its holding. We conclude that the Court of Appeals erred in holding that the trial court did not abuse its discretion by limiting closing argument to twenty minutes and by denying defense counsel's request for an additional three minutes.

I. FACTS
Late one evening, the victim, Binh Nguyen, was working at a machine shop owned by the appellant's father, Son Dang. Nguyen was scheduled to work until midnight, at which point another employee, Tan Pham, would begin his shift. The customary practice for employees working the night shift was to keep the doors locked until the next employee arrived. On that particular night, when Pham arrived and knocked on the door, Nguyen did not answer. Pham saw holes around the doorknob. He looked through one of these holes and saw Nguyen lying on the floor with his head toward the door. Pham immediately went home and called the owner Son Dang. After being apprised of the situation, Dang called the police and then went to the shop with Pham to meet the police.
When Officer Kerr Richards arrived at the shop, he noticed that a side door was open and saw a body lying on the floor. After calling for an ambulance, Richards saw two Asian males, later identified as the appellant and Quynh Tran, ransacking the office. Richards also saw an Asian female, later identified as Linda Nguyen, walking in another part of the building. Concerned there might be others in the front part of the building that he could not see, Richards decided to return to his car and call for backup. As he walked to his car, Richards heard three gun shots coming from inside the building. He immediately sought cover and waited for additional support to arrive.
At this point, Dang and Pham arrived at the shop and Richards told them to wait across the street until the police had secured the scene. Within a few minutes, the shop and parking lot were secured by other officers. The police caught the appellant and Linda outside the building. Shortly thereafter, Quynh and Kenneth Tran were also captured, and they were placed in separate police cars. Sergeant *618 G.J. Novak interviewed them about the incident. About two hours later, Novak had all four transported to the Houston Police Department homicide office.
Sergeant Ted Bloyd left the appellant in the homicide office to observe questioning of Linda and Quynh. About three hours later, Bloyd informed the appellant that he was considered a suspect. The appellant was then taken to a magistrate for administration of his legal warnings. Then Bloyd reminded the appellant of his legal warnings and recorded the appellant's oral statement,[2] which was approximately ten minutes in length. Homicide officers continued to question the appellant intermittently for several hours, and then took him to a juvenile detention center. The appellant's parents were told of his whereabouts about two hours later.[3]
During the trial, the State offered the appellant's statement and the testimony of other witnesses to show that, on the night of the murder, the appellant and Quynh went to rob the machine shop. Although the appellant was not armed, Quynh was carrying a nine-millimeter pistol. Nguyen recognized the appellant and let him and Quynh into the shop. After Nguyen returned to his work, Quynh handed the appellant the pistol and instructed him to shoot Nguyen because he would tell the appellant's father that they had been there. The appellant could not bring himself to shoot Nguyen, so he engaged the safety on the gun, pulled the trigger, and told Quynh that the gun had jammed. Although firearms-identification tests indicated that Nguyen had been shot several times and with two different guns, the appellant told the police in his statement that Quynh alone shot Nguyen.
After Nguyen was killed, the appellant and Quynh quickly searched the shop for money. The only thing that they could find was his father's nine-millimeter pistol, which they took with them. Quynh fired several shots at the side door to make it appear that someone had forcibly entered the shop. The appellant shot at the side door using his father's gun.
The appellant and Quynh went to their apartment to get a crowbar. At the apartment, the appellant and Quynh told Linda what had happened and Quynh called Kenneth. According to Kenneth's testimony, Quyhn told him that they had killed someone and needed to go back to the shop. After Kenneth arrived at the apartment, Linda was crying, and the appellant was wiping down a pistol with a towel. Kenneth returned to the shop with his friends to act as a lookout while the others continued to search for money. Richards arrived while the appellant, Quynh, and Linda were continuing their search.
During the trial, and after the State and the defense had finished presenting evidence, the trial court informed counsel that closing arguments would be limited to twenty minutes for each side. Defense counsel objected and said that twenty minutes was inadequate to discuss the several ways that the State alleged that the appellant could be found guilty. Defense counsel also emphasized that this was a capital-murder case, which could result in the life imprisonment of a juvenile. The trial court noted the objection, but did not grant additional time.
*619 Defense counsel began arguing the appellant's case in an abbreviated manner. When the twenty-minute period had expired, the trial court immediately ended counsel's argument. Defense counsel then requested an additional three minutes, which the trial court denied. After the State's final argument, defense counsel repeated his request for additional time, stating that he had not been able to cover the nine ways that the State had argued that the appellant could be found guilty or to apply the law to the facts of the case. The trial court refused counsel's request for additional time.
The appellant was found guilty of capital murder and sentenced to life imprisonment. At the hearing on the motion for new trial, defense counsel listed the specific arguments that he would have made, given additional time. The trial court denied the appellant's motion for new trial.
On direct appeal, the appellant claimed, among other grounds for relief, that the trial court abused its discretion in limiting closing argument to twenty minutes. After analyzing the statutes and relevant case law, the Court of Appeals affirmed the appellant's conviction.
The Court of Appeals relied on the factors listed in Bell v. State.[4] The Court of Appeals conceded that twenty minutes for closing argument in this case presented "a challenging task even for the appellant's very able trial counsel."[5] It also said that "by limiting the closing argument to just twenty minutes, the trial court came precariously close to crossing the line," given the facts in this case.[6] Nevertheless, the court concluded that the twenty-minute time limitation was neither arbitrary nor unreasonable and concluded that the trial court did not abuse its discretion in limiting closing argument.[7]

II. LAW
We have held that trial courts have broad discretion in determining the length of arguments during a trial.[8] Of course, trial courts have broad discretion in managing the course of a trial generally.[9] However, this discretion is not limitless. For example, Rule of Evidence 611 permits a trial court broad discretion in controlling the mode and order of interrogation of witnesses and presentation of evidence.[10] Under this rule, the scope of a trial court's exercise of discretion is limited to that which is (1) reasonable and (2) in the pursuit of justice as well as efficiency.[11]
The Code of Criminal Procedure does not provide much guidance to the trial courts regarding how long arguments can be. The statutory right to argue at the close of the evidence is derived by inference from Articles 36.07 and 36.08.[12]
Article 36.07 gives broad discretion to the trial court regarding the general order of arguments with the caveat that the *620 State has the right to present the concluding argument. Because the legislature addressed the order in which arguments should be presented, we can assume that an implicit right to closing argument exists.
Under Article 36.08, the court is prohibited from restricting arguments in felony cases to less than two on each side. This Court has interpreted this to mean that a defendant is entitled to two arguments if he is represented by more than one lawyer.[13] If a defendant has the right to two closing arguments, then we can presume that he has the right to one closing argument.
It would be a hollow right to afford a defendant the right to have an argument without the right that he be allotted a reasonable time to make it. If a trial court were to allow a defendant, for example, a ten second argument, it would be worthless to the defendant because his counsel would not have time to address the facts and law reasonably. As a result, we conclude that the restrictions placed upon the parties by the trial court must be reasonable. So far, we have provided little guidance about how to determine what is a reasonable amount of time in any given case.
We have rarely addressed complaints by defendants that a trial court's time limit was unreasonable. In Walker v. State[14] and McLean v. State,[15] we determined that the time limit set by the trial courts amounted to a constructive denial of the defendant's right to be fully heard, and thus, constituted a basis for reversible error.
In Walker, we concluded that the time limitation set by the trial court violated the defendant's rights as enumerated by former Article 4 of the Code of Criminal Procedure.[16] Article 4, in its entirety, can currently be found in the Texas Code of Criminal Procedure as Article 1.05.[17] We said that
where there are contested issues, and when contradictory and voluminous evidence requires patient and careful consideration on the part of the jury, and challenges the skill and ability of counsel to sift the false from the true, and show suspicious facts to be consistent with innocence. The accused has an undoubted right to any advantage from this source. Yet this right may be utterly destroyed if the court can arbitrarily limit argument, because in his opinion the evidence is so clear that argument can not vary it.[18]
*621 In McLean, we cited Walker and said that "[t]aking into consideration the number of witnesses testifying and the conflict in the testimony, we think the court erred in placing any such limitation upon counsel."[19]
More recently, the lower appellate courts have followed similar factors in an opinion from the Fourth Court of Appeals, Moya v. State.[20] In determining whether the trial court abused its discretion in placing a time limitation on closing argument, the Moya Court looked at (1) the quantity of evidence, (2) conflicts in testimony, and (3) the complexity of the issues.[21]
In addition to applying Moya, several courts of appeals have considered defense counsel's conduct during argument to determine whether the trial court abused its discretion. For example, some courts consider whether counsel (1) objected, (2) completely used the time allotted, (3) requested additional time, (4) was cut off by the trial court, and (5) listed the issues that would be covered if given more time.[22] All of these factors have some relevance to a reviewing court's inquiry, though some may be more appropriate to considering whether a defendant has preserved the complaint for review or for determining whether the defendant was harmed.
We conclude that reviewing courts should consider, but are not limited to considering, the following non-exclusive list of factors on a case-by-case basis: (1) the quantity of the evidence, (2) the duration of the trial (3) conflicts in the testimony, (4) the seriousness of the offense, (5) the complexity of the case, (6) whether counsel used the time allotted efficiently, and (7) whether counsel set out what issues were not discussed because of the time limitation. We will apply these factors to this case.

III. APPLICATION

(1) Quantity of the Evidence, (2) Duration of the Trial, and (3) Conflicts in the Testimony
We will consider the first three factors together. The record indicates that eleven witnesses testified over a two-day period. The defense in this case presented only one witness to the State's ten witnesses. However, the number alone does not indicate the number or degree of potentially existing conflicts. Here, the record indicates there were significant evidentiary conflicts that came up during defense counsel's cross-examination of the State's witnesses.

(4) Seriousness of the Offense and

(5) Complexity of the Issues
In this case, the appellant was charged with capital murder, which is, of course, a *622 very serious offense. If found guilty, the appellant faced a life sentence. The record and briefs indicate that there were many complex legal issues. The State alleged eleven different ways that the appellant could be guilty of an offense. The charge included instructions on two lesser-included offenses, murder and felony-murder; the law of parties the law of conspiracy; and the voluntariness of the appellant's statement.[23] The jury deliberated for five-and-a-half hours.

(5) Efficient Use of Time
The record indicates that counsel used his time effectively during argument and did not engage in improper argument. Counsel covered relevant and contested issues from the trial and did not waste time with needless repetition.

(6) Issues That Were Not Discussed
During the motion for new trial hearing, defense counsel offered a list of topics that he would have covered if given more time. There were a number of legal theories and factual conflicts that counsel was unable to address.
The list of legal theories included (1) intentionally or knowingly causing bodily injury in the context of the lesser-included offense of robbery (2) intentionally or knowingly threatening the victim or placing the victim in fear of imminent bodily injury or death, (3) the phrase "in the course of committing theft," (4) the portion of the definition of theft that deals with the intent to permanently deprive the owner of his property, (5) the phrase "without the owner's effective consent," (6) who the owner of the property was, (7) whether there was a conscious objective or desire to cause a certain result, (8) the definition of acting knowingly, (9) the definition of party liability, (10) the law of conspiracy.
The list of factual conflicts included (1) problems with the medical examiner's testimony regarding the bullet that caused the victim's death because the medical examiner testified incorrectly and then corrected the false impression, (2) the credibility of the officer who testified about the voluntariness of the appellant's statement, (3) the application of the law to the facts regarding the juvenile statement, and (4) additional conflicts in the testimony of the co-defendant.
Although the trial court has considerable discretion in setting time limits to efficiently move its docket along, we conclude that the factors weigh in favor of concluding that the trial court abused its discretion in this case.

IV. CONCLUSION
We hold that the Court of Appeals erred when it concluded that the trial court did not abuse its discretion. We reverse the judgment of the Court of Appeals and remand the case to that Court for a harm analysis.
MEYERS, J., filed a concurring opinion, in which HOLCOMB and COCHRAN, JJ., joined.
WOMACK, J., concurred.
KEASLER, J., filed a dissenting opinion, in which HERVEY, J., joined.
KELLER, P.J., dissented.
MEYERS, J., filed a concurring opinion, in which HOLCOMB and COCHRAN, JJ., joined.
I join the majority opinion. We were asked to determine whether the trial court *623 abused its discretion in limiting the time for argument. While I fully agree with the majority's analysis and conclusion, I write separately to note the dissenting opinion by Justice Hudson of the court of appeals, which elaborates on the Sixth Amendment violation resulting from this abuse of discretion. Justice Hudson equates the judicially imposed time limitation on argument to a complete abrogation of the Sixth Amendment.
Everyone concedes that the accused must be permitted a full hearing where, if he chooses, he may present all relevant evidence in his defense. In this endeavor he is entitled to the assistance of counsel. Moreover, the right to be represented by counsel includes the right to fully argue the merits of his defense. How a lawyer chooses to argue may vary.
* * *
If, due to time limitations, counsel is constrained to leave off some point of fact, some logical syllogism, some emotional plea  has the defendant been afforded a full or partial hearing? If counsel must hurry his remarks and speak in an unnatural manner to meet the time restrictions, has not the judge dictated both the content of the argument and the manner of its delivery? In other words, has not the court infringed upon the defendant's right to be fully represented by counsel? The right to counsel was "secured to the people of England, from whence we [borrowed it], by long and persistent efforts." Dille v. State, 34 Ohio St. 617, 619 (Ohio 1878). By what authority do courts infringe upon it today? The fact that we came into possession of this liberty as a conceded right, ought not to cause us to underrate or forget its importance. Id. While the people have it within their authority to repeal the Sixth Amendment, the judiciary (even by incremental progression) do not.
Dang v. State, 99 S.W.3d 172 (Tex.App.-Houston [14th Dist.] 2002) (Hudson, J., dissenting) (footnotes omitted).
The factors enumerated by the majority provide a useful guideline for determining whether the trial court abused its discretion in limiting the time for argument and I agree that this was the proper method for deciding this case. However, I also agree with Justice Hudson that the limitations placed on counsel in this case effectively deprived Appellant of the full representation of counsel and thus infringed on his rights under the Sixth Amendment.
In concluding that the limitations placed upon counsel in this case infringed upon Appellant's Sixth Amendment right, Justice Hudson properly referred to the Supreme Court decision in Herring v. New York, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975). In that case, the Supreme Court held that a New York statute which gave the trial court discretion to bar closing arguments in a bench trial violated a defendant's Sixth Amendment right to assistance of counsel. Id. at 865. While noting that the trial judge "may limit counsel to a reasonable time and may terminate argument when continuation would be repetitive or redundant ... [and he] may ensure that argument does not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial[,]" id. at 862, the Supreme Court concluded that:
It can hardly be questioned that closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. For it is only after all the evidence is in that counsel for the parties are in a position to present their respective versions of the case as a whole. Only then can they argue the inferences to be drawn from all the testimony, and point out the weaknesses of their adversaries' positions. And for the defense, closing argument is the last *624 clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt. The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free. In a criminal trial, which is in the end basically a factfinding process, no aspect of such advocacy could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment.
Id. at 862. With these comments, I join the majority opinion.
KEASLER, J., filed this dissenting opinion in which HERVEY, J., joined.
Today, the majority comes to the breathtaking conclusion that a trial judge abuses his discretion in limiting closing arguments to twenty minutes in a trial where the testimony of eleven witnesses lasted a mere day and a half. Additionally, it sets out a "nonexclusive list of factors" that trial judges must henceforth consider in limiting argument. I suppose the fact that it is nonexclusive gives us leeway to whimsically add more factors later when we second guess their decisions.
The Court of Appeals correctly decided the case, but I disagree with its statement that this is a close case. It is not close at all. I think the majority could search both federal and state precedent until doomsday to find another case where an appellate court reversed a case under similar facts. Indeed, it had to go back more than one hundred ten years to find cases where we reversed a trial judge's limitation on closing argument under any set of facts.
Our unfortunate jurisprudence with respect to jury selection has for many years tied the hands of Texas trial judges in controlling voir dire. So long as a lawyer is asking relevant, non-repetitive questions to respective jurors, he or she can go on and on indefinitely  and some do. Until today, trial judges have been free to limit final arguments with no interference from us, and they have used their discretion wisely and fairly.
Of course, a judge could abuse that discretion. It is not hard to think of outrageous facts that would require reversal. This is clearly not one of them. Judge Rains set a reasonable time to argue a 1 1/2 day case.
This case will hinder trial judges in controlling the length of trials. In 1988, The National Center for State Courts conducted a year-long three-state study on trial length and management. It concluded that judges who are given the tools to control the trial and use them vigorously conduct more just, efficient, and effective trials. The tools include broad discretion in setting time limits on voir dire, opening statements, evidence presentation, and closing arguments.[1] Like in setting time limits on voir dire, Texas trial judges now will be more reluctant to limit argument, fearing that we might reverse them for abusing their discretion. The safer practice will be to not limit lawyers at all, thereby letting them harangue the jury until they are brain dead.
It really isn't too much to ask that a lawyer be concise. Good ones are.
About fifty years ago a preacher (whose name, despite extensive research, I have not been able to find) wrote in an article about sermons, "You can't save souls after twenty minutes." Twenty minutes was enough for argument in this case, too. *625 Because the majority finds otherwise, I dissent.
NOTES
[1] Dang v. State, 99 S.W.3d 172 (Tex.App.-Houston [14th Dist.] 2002).
[2] The voluntariness of the appellant's statement and alleged Family Code violations were presented in a pretrial motion to suppress, which the trial court denied. The appellant requested that these issues be presented to the jury. The trial court allowed a jury instruction regarding the voluntariness of the statement only.
[3] There is some dispute about when the appellant's parents were informed of his arrest.
[4] 768 S.W.2d 790, 803 (Tex.App.-Houston [14th Dist.] 1989, pet. ref'd) (stating that the factors to be considered to determine whether a trial court has abused its discretion in limiting defense counsel's arguments are (1) the quantity of the evidence, (2) conflicts in the testimony, and (3) the complexity of the issues).
[5] Dang, 99 S.W.3d at 190.
[6] Dang, 99 S.W.3d at 191.
[7] Ibid.
[8] Hernandez v. State, 506 S.W.2d 884, 886 (Tex.Crim.App.1974); Robinson v. State, 415 S.W.2d 180, 182 (Tex.Crim.App.1967).
[9] See generally Tex.R. Evid. 611.
[10] Ibid.
[11] Ibid.
[12] TEX.CODE CRIM. PROC. art. 36.07; TEX.CODE CRIM. PROC. art. 36.08.
[13] Varela v. State, 561 S.W.2d 186 (Tex.Crim.App.1978).
[14] Walker v. State, 32 Tex.Crim. 175, 22 S.W. 685 (1893) (holding that it was reversible error to limit defense counsel to forty-five minutes for closing argument in a theft case).
[15] McLean v. State, 32 Tex.Crim. 521, 24 S.W. 898 (1894) (holding that it was reversible error to limit defense counsel to seventeen minutes for closing argument in an adultery case).
[16] Walker, 32 Tex.Crim. at 179, 22 S.W. at 686.
[17] Code of Criminal Procedure Article 1.05 states

In all criminal prosecutions the accused shall have a speedy public trial by an impartial jury. He shall have the right to demand the nature and cause of the accusation against him, and to have a copy thereof. He shall not be compelled to give evidence against himself. He shall have the right of being heard by himself, or counsel, or both; shall be confronted with the witnesses against him, and shall have compulsory process for obtaining witnesses in his favor. No person shall be held to answer for a felony unless on indictment of a grand jury.
[18] Walker, 32 Tex.Crim. at 179, 22 S.W. at 686.
[19] McLean, 32 Tex.Crim. at 524, 24 S.W. at 898.
[20] Moya v. State, 691 S.W.2d 63 (Tex.App.-San Antonio 1985) (ten minute time limit on closing argument in a felony case not an abuse of discretion).
[21] Moya, 691 S.W.2d at 65.
[22] Plattenburg v. State, 972 S.W.2d 913, 918 (Tex.App.-Beaumont 1998, pet. ref'd) (thirty-five minute time limitation not an abuse of discretion because counsel's argument was not cut off by the trial court, counsel did not seek additional time after presenting the argument and counsel did not identify what issues he would have addressed to the jury given additional time); Arevalo v. State, 835 S.W.2d 701, 707 (Tex.App.-Houston [14th Dist.] 1992, no pet.) (15 minute time limit for closing argument in a narcotics case not an abuse of discretion based on Moya factors, no objection to time limit before or after argument, no additional time requested, and counsel covered all contested issues); Barajas v. State, 732 S.W.2d 727, 729 (Tex.App.-Corpus Christi 1987, pet. ref'd) (twenty minute time limitation not an abuse of discretion because counsel failed to object after presenting the argument and failed to preserve any error).
[23] The dissent in the Court of Appeals' opinion noted that the jury charge itself took 21 minutes to read and the impossible task assigned to defense counsel "to explain, apply and argue the charge in less time than that required to simply read the charge." Dang, 99 S.W.3d at 198.
[1] National Center for State Courts, On Trial, NCSC 1988.