Affirmed and Opinion filed July 25, 2006








Affirmed and Opinion filed July 25, 2006.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00104-CR

____________

 

ERIC MADRY, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 176th
District Court

Harris County, Texas

Trial Court Cause No. 989,266

 



 

O P I N I O N

Appealing his aggravated assault conviction, appellant Eric
Madry asserts the trial court reversibly erred in denying his request to call a
witness to impeach the complainant and in limiting his punishment-phase closing
argument to five minutes.  We affirm. 

I.  Factual and Procedural
Background








Appellant and the complainant, Demetria Jackson, are the
parents of a school-age daughter and were involved in an Aon again, off
again@ relationship.  On
Valentine=s Day 2004, appellant shot Jackson in the mouth.  The
bullet traveled through Jackson=s lip, almost cut her tongue in half, and
fractured the first cervical vertebrae in her neck.  Appellant was charged with
aggravated assault.  At his trial, the only disputed issue was whether the
shooting was accidental or intentional. 

Jackson testified that appellant intentionally shot her at
a very close range.  She recounted the events that led to the shooting,
explaining that on the night of the incident, she picked appellant up from her
sister=s house on her way
home from work.  According to Jackson, she and appellant were trying to
reconcile.  After they arrived home around 11:30 p.m., Jackson took a bath and
went to her bedroom to watch television.  Around 1:30 a.m., as she was drifting
off to sleep, she noticed appellant reclining in a chair next to her bed.  When
she awoke an hour later, appellant was not there, prompting her to get out of
bed to investigate his whereabouts.  

Jackson soon discovered that her vehicle was missing.  As
she walked back to her bedroom, she heard the garage door open.  When she saw
appellant, she asked him where he had gone.  In response,  appellant accused
her of being with another man earlier that day and pushed her onto the bed. 
Appellant pinned her down and pulled her hair when she attempted to escape. 
According to Jackson, appellant then jumped up, and said, AI=m going to show
you I=m going to show you.@  Appellant left
and returned seconds later with her handgun and pinned her down again, saying, AI=m tired of you. I=m tired of you
Demetria.@  Appellant pushed the handgun into Jackson=s cheek. 
Initially, Jackson did not believe appellant would shoot her, however, his
demeanor changed during the struggle.  Appellant placed his arm around her
neck, dragged her off the bed, and told her that she was going to die. 
Appellant then shot her in the mouth. 








Immediately after the shooting, appellant began screaming, AOh God, oh Lord,
oh sC.@   He ran around
the house, as Jackson felt like she was Adrifting away.@  Upon her
repeated requests, appellant finally placed a 9-1-1 call and stated, Amy girlfriend has
been shot.@  Jackson took the phone away from appellant and tried
to explain what had happened, but she experienced great difficulty in doing so
because she had just been shot in the mouth. The police arrived while Jackson
was still on the phone with the 9-1-1 operator. 

Deputy Abraham Alanis with the Harris County Sheriff=s Department was
the first officer to arrive on the scene.   When he arrived, appellant stood at
the front door appearing quite Ahysterical.@  Appellant claimed
that he accidently shot his girlfriend.  Deputy Alanis found Jackson on the
floor, bleeding severely from her mouth. Deputy Alanis testified that he
thought that Jackson stated the shooting was accidental, but because the
gunshot injury was affecting her speech, it was difficult to discern what she
actually said.  Deputy Alanis tried to ask her further questions about the
shooting, but Jackson could not answer.

Appellant, testifying in his own defense, gave a very
different account of what happened that night.  He testified that after Jackson
fell asleep, he left the house for a short period.  When he returned, Jackson
questioned him about where he had been and then Agot in his way@ as he tried to
put a load of clothes into the washing machine.  After becoming very irritated,
he pushed her out of the way and they exchanged words.  Appellant told Jackson
that he easily could leave because he had another woman waiting for him.  According
to appellant, after he made this statement, Jackson stormed out of the room. 
Realizing it was Valentine=s Day, appellant followed Jackson into the
bedroom to reconcile.  When he entered the bedroom, Jackson had a gun in her
hand.  Appellant stated that he grabbed at the gun to take it away and it
accidently went off in Jackson=s mouth.  Appellant testified that he
immediately placed the 9-1-1 call.  However, during cross-examination,
appellant changed his account, explaining that he was trying to show Jackson
that the gun was not loaded when it accidently discharged.  He further said he
might have told the police that when he pulled the slide back to show her that
the gun was not loaded, his finger could have been on the trigger causing it to
accidently discharge.  








The jury convicted appellant of the charged offense and
assessed punishment at twelve years= confinement.

II. Issues Presented 

Appellant asserts the following two issues on appeal: 

(1)     The trial court abused its discretion in
denying his request to call a witness to impeach the complainant with a prior
inconsistent statement. 

(2)     The trial court reversibly erred in limiting
closing argument to five minutes during the punishment phase. 

 

II. Analysis

A.      Did the
trial court abuse its discretion in denying appellant=s request to call
a witness to impeach the complainant based on an alleged prior inconsistent
statement?

In his first issue, appellant contends that the trial court
abused its discretion in denying his request to call a witness to impeach
Jackson with a prior inconsistent statement.  We conclude that appellant failed
to lay the proper predicate for the introduction of any prior inconsistent
statement made by Jackson. 

We review a trial court=s admission or
exclusion of evidence for an abuse of discretion. Rankin v. State, 974
S.W.2d 707, 718 (Tex. Crim. App. 1996) (op. on reh=g).  In
determining whether the trial court abused its discretion, we consider whether
the court acted without reference to guiding rules and principlesCthat is, whether
the court acted arbitrarily or unreasonably. Lyles v. State, 850 S.W.2d
497, 502 (Tex. Crim. App. 1993).  We must uphold the trial court=s ruling so long
as it is Awithin the zone of reasonable disagreement.@  Wheeler v.
State, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002).








A party may impeach a witness with evidence of a prior
inconsistent statement if the party first presents the witness with the
existence of the statement, the details and circumstances surrounding the
statement, and gives the witness the opportunity to explain or deny the
statement. Tex. R. Evid. 613(a). 
To be admissible under Texas Rule of Evidence  613(a), a prior statement must
be inconsistent with the one given at trial.  Lopez v. State, 86 S.W.3d
228, 230 (Tex. Crim. App. 2002).   If a party fails to establish this
predicate, the trial court should sustain an objection to extrinsic proof of
the prior inconsistent statement.  Ferguson v. State, 97 S.W.3d 293, 296
(Tex. App.CHouston [14th Dist.] 2003, pet. ref=d). 

Appellant complains that the trial court abused its
discretion when it refused to permit him to call a witness to impeach Jackson
with a prior inconsistent statement.  He further states that, although Jackson
testified that appellant shot her intentionally, the trial court prevented him
from eliciting evidence from another witness to show that Jackson previously
said the shooting was accidental.  Deputy Alanis testified as follows: 

The State:             And were you able to
communicate with the complainant? 

Deputy Alanis:      Yes.  Well, no.  After when I
went to the bedroom and I was escorting the defendant she did advise that it
was an accident. [sic]. At least I believe that=s what she said. It was hard to understand what she
was saying.  After I escorted the defendant to my unit I came back and tried to
ask her other questions, but she didn=t give any other answers. She was having trouble speaking.

The State:             Where was he when she said that?

Deputy Alanis:      In the bedroom.
Still in the bedroom. 

Although there is nothing in the record that suggests
Jackson made the same or a similar comment to any person other than Deputy
Alanis, appellant sought to call Michelle Permenter, a Crime Victims Advocate,
as a witness who allegedly would have testified that Jackson told her that the
shooting was accidental. The trial court denied appellant=s request. 








Under Rule 613, before appellant could introduce any
extrinsic evidence that Jackson made a prior inconsistent statement to
Permenter, he had to confront Jackson with the statement, telling her the
contents of the statement and the time, place, and person to whom it allegedly
was made.  Beauchamp v. State, 870 S.W.2d 649, 652  (Tex. App.CEl Paso 1994, writ
ref=d) (holding that
defendant failed to lay proper predicate for introduction of police officer=s prior
inconsistent statement indicating that he did not believe defendant was
intoxicated).  At trial, appellant asked Jackson only one question about her
statement regarding whether the shooting was accidental or intentional.  During
her testimony, appellant asked Jackson, AYou did tell the
officers it was an accident, right?@  Jackson replied,
AI don=t remember saying
that.@  Appellant did
not comply with Rule 613 as he did not confront Jackson with a prior
inconsistent statement, nor did he summarize the contents of any prior
inconsistent statements that she allegedly made to Permenter that would have
been admissible under Rule 613.  See Carty v. State,  No. 74, 295, 2004
WL 3093229, at *4 (Tex. Crim. App. Apr. 7, 2004) (not designated for
publication) (concluding that proper predicate for impeachment by prior
inconsistent statement was not laid, so as to allow admission of alleged
accomplice witnesses= prior inconsistent videotaped statements
at capital murder trial, where those witnesses did not deny any statement
actually made on the tapes); Osteen v. State, 61 S.W.3d 90, 91B92 (Tex. App.CCorpus Christi
2001, no pet.) (holding that defendant failed to lay the proper predicate for
the admission of a prior inconsistent statement, where defendant did not tell
victim the contents of the allegedly inconsistent statement or afford her an
opportunity to explain or deny the statements); L.M.W. v. State, 891
S.W.2d 754, 759B60 (Tex. App.CFort Worth 1994,
writ ref=d) (holding that
defendant charged with indecency with a child by contact failed to lay proper
predicate for videotaped evidence of child victim conducted by psychologist
which contained exculpatory and impeaching evidence that directly contradicted
victim=s trial testimony,
where defendant did not tell victim context of allegedly inconsistent
statements or afford him opportunity to explain or deny statements).  We
conclude that the trial court did not abuse its discretion in refusing
appellant=s request to call Permenter as a witness.  Wheeler,
67 S.W.3d at 888B89.  Accordingly, we overrule appellant=s first issue. 

B.      Did the trial court err in limiting closing
argument to five minutes during the punishment phase?        

In his second issue, appellant asserts the
trial court erred in limiting closing argument to five minutes during the punishment
phase of trial. We conclude that appellant failed to preserve error as to this
issue. 

During the punishment phase, appellant was not eligible for
probation and the jury had to assess punishment based on a range of two to
twenty years= confinement.  The trial court formally readmitted
into evidence all of the evidence that had been admitted during the
guilt-innocence phase, although the jury did not hear this evidence a second
time.  The trial court admitted a stipulation of evidence as to appellant=s prior
convictions for assault and unlawfully carrying a weapon, as well as the
judgments for those convictions.  Appellant offered no evidence during the
punishment phase of trial, although appellant=s counsel had
appellant=s mother stand and he introduced her to the jury
without calling her as a witness. 

After the trial court informed appellant and the State that
they would have five minutes each for closing argument, appellant requested ten
minutes instead of five.  The trial court denied his request.  Counsel for
appellant stated on the record that he needed to make an informal bill of
exceptions as to what his argument would have been if he had been granted ten
minutes.  The record contains the following exchange:

The Court: Both sides have five minutes to make final arguments.  

Let=s bring in the jury. 

Defense counsel: I=d like ten.

The Court: Give you five. 

Defense counsel: And make my Bill. 

The Court: You=ll get five minutes. Do the best you can.








Defense counsel: May I make my Bill on that later to
the Court.

The Court: No need to make a Bill on the Judge=s ruling. 

Defense counsel: Yes, there is, Your Honor.

The Court: Not in regards to how much time you=re going to get to argue.

Defense counsel: To show what I would argue. I=m going to keep it within five minutes. I=m C I=m objecting really to being so severely limited to five minutes. 

The Court: Your objection is noted. It will be
overruled.

Defense counsel: Motion for New
Trial and further develop this issue. 

After the State waived its right to open, appellant=s counsel used his
five minutes to make the following argument:

Thank you, Your Honor. We=re here to ask you at this time to
consider punishment.  You will be instructed and have been instructed to do
that. I=d like to mention a few factors
that you may take into account.  First of all, we certainly admit this is a bad
case.  Ms. Jackson was shot through the mouth and the bullet is still in her
head.  And it=s a bad case. Lot of harm, lot of
pain.  So we don=t dispute that. But now is the time
for you to inflict pain on the defendant.  Whatever pain you think he
deserves.  Justice calls for.  

Now obviously, this is tough on a jury because for
various reasons we C there is a lot more C this thing could have gone into
next week.  I always look back and say maybe I should have done more.  Maybe I
should have put Ms. Jackson under more cross examination.  Those were choices I
made. I live with that.  With all these verdicts that I=ve had to go through through the
years.  And it=s not C no matter what these cases are,
they=re hard on me.  They=re hard on everybody, I think. Hard
certainly on the defendant=s family.  I don=t like to lose this case.  I
consider it important that I do my job representing Mr. Eric. Apparently, I
didn=t do the job on the guilt phase,
but we have to accept your verdict.  








Now, some of you will be probably very harsh. 
Wanting to give a harsh sentence.  Some of you may not.  It=s just the way you=re going to look.  We didn=t really go into what your theories
of punishment are and how you look upon things.  I just submit to you this. 
Without taking away or blaming anybody or anything, there is evidence that this
C there is undisputed evidence that
Ms. Jackson pulled the pistol twice before.  That=s undisputed.  And one of my questions was
overruled, so I didn=t get that answer whether she
pulled a pistol on the defendant=s mother.  There is a conflict here.  There is agitation.
Like one of the jurors said C I believe it was said that in something like this there is a lot going
on.  You only have the tip of the iceberg probably.  But I made the decision to
try this case in this manner.  I have to live with it.  

I=m asking you for consideration on the punishment. I don=t think there is any need to have
Mr. Eric testify again.  He already showed that C remember his testimony about the compassion he
showed after how sorry he was.  I don=t think any more than that needs to be said.  That=s what he did.  There was a
shooting.  She was shot. He=s sorry.  He=s holding her in his hands getting
911.  You heard that.  It=s a bad situation.  It=s not like he said, ha, ha, I shot
you dad gum.  I did it. And nobody is taking that position.  He=s repentant.  

Now, the Judge has given C you were told a little bit about
parole C let me tell you what he said is
that this is a serious case.  He=s going to serve, no matter what,  at least two years in
the penitentiary before he is ever eligible for parole with this kind of case. 
Don=t speculate that the Parole Board
is going to do him any favors.  He may serve day by day when [sic] you give him
his sentence in the jail.  He=s got that daughter.  He needs to get back and do something.
Rehabilitate his life.  I certainly will help him in any way I can if the
family wants my help.  I like to see a client do well, especially straighten up
their lives.  Personally if I achieve that I think it=s C he=s 36.  I ask you to be towards the lower end of the scale.  Remember
that whatever you give him he=s going to serve at least half the time before he=s even eligible.  He=s going to the penitentiary, maybe
the Derrington Unity [sic].  Maybe where that potential juror has worked as a
guard.  So that=s what=s going to happen.  You don=t have probation as an option.  

[Trial court states that time is up.]

And ask for your consideration for the best interests of everybody. 
Thank you.

Despite his previous acknowledgment that he needed to show
what he would have argued had the court given the defense ten minutes for
closing instead of five minutes, appellant=s counsel did not
make a record in this regard at any time during trial, nor was he prevented
from doing so.  In fact, appellant=s counsel
suggested to the trial court that he would make such a record later, apparently
by means of his motion for new trial.  








Appellant sought a new trial based in part on the
five-minute time limitation as to closing argument in the punishment phase. 
Although appellant inaccurately stated in this motion that the trial court had
refused to allow him to make a bill of exceptions as to what counsel would have
argued if he had been granted ten minutes for closing argument, appellant did
not state in any part of the motion what this argument would have been. 
Similarly, at the hearing on appellant=s motion for new trial,
appellant=s counsel asserted, inaccurately, that the trial court
had refused to allow him to make a bill of exceptions as to what counsel would
have argued if he had been allotted ten minutes for closing argument.  Although
the trial court did tell appellant=s counsel to save
a discussion of the background of time limitations for his appellate brief, the
trial court let appellant=s counsel proceed, and, instead of
presenting the matters that the defense would have argued if the court had
allotted ten minutes for the punishment-phase closing argument, appellant=s counsel again
postponed any such presentation, promising the trial court that he would
present these matters in appellant=s appellate
brief.  On appeal with different counsel, appellant still has not asserted what
his trial counsel would have argued in the additional five minutes.

Appellant asserts on appeal that the trial court refused to
allow him to make an informal bill of exceptions in this regard both during
trial and at the motion-for-new-trial hearing.  We find no support for this
assertion in the record.  The record does not reflect that the trial court
precluded appellant from making a record as to what his trial counsel would
have argued in the additional five minutes that he requested.  Though the trial
court may have pressured the trial lawyers to be concise, this action is not
the same as denying an opportunity to make a record.   Likewise, though the
trial judge said at trial that there was no need for a bill of exceptions, he
allowed appellant=s counsel to continue speaking.  Rather
than state the topics that he wanted to cover but was unable to address during
closing, appellant=s counsel voluntarily delayed the making
of a record.  








Under ordinary preservation-of-error rules, it might appear
that defense counsel would be required to make a record as to all the topics he
wanted to cover during closing or as to the topics that counsel could not cover
because of the time limitation before jury deliberations began.  See Barajas
v. State, 732 S.W.2d 727, 729 (Tex. App.CCorpus Christi 
1987, writ ref=d) (concluding appellant failed to preserve error as
to trial court=s twenty-minute limitation on closing argument in part
because appellant did not present his bill of exceptions as to the topics he
could not cover in the twenty-minute argument until after the trial was over). 
We have not found, and the parties have not cited, any case from the Court of
Criminal Appeals directly addressing this issue.








In Dang v. State, appellant=s counsel
presented to the trial court during trial the matters that he wished to cover
during closing but could not due to the time limitation, so there was no issue
in Dang as to preservation of error.  See 154 S.W.3d 616, 619B22 (Tex. Crim.
App. 2005).  The Court of Criminal Appeals in Dang stated that courts
should determine whether a trial court abused its discretion in limiting the
time for closing argument by considering the following non-exclusive factors on
a case-by-case basis: (1) the quantity of the evidence, (2) the duration of the
trial (3) conflicts in the testimony, (4) the seriousness of the offense, (5)
the complexity of the case, (6) whether counsel used the time allotted
efficiently, and (7) whether counsel set out what issues were not discussed because
of the time limitation.  Id. at 621.  If one of the factors for
consideration on a case-by-case basis is whether counsel set out the issues not
discussed because of the time limitation, then it would seem that setting out
these issues might not be required.  In discussing factors courts have used to
determine error, including whether counsel identified the issues not discussed
because of the time limitation, the Dang court stated that these factors
were relevant to the error analysis, although some of them Amay be more
appropriate to considering whether a defendant has preserved the complaint for
review or for determining whether the defendant was harmed.@  Id. 
Further, in reviewing the seventh factor, the Dang court used the list
of topics presented at Dang=s motion-for-new-trial hearing.  See
id. at 622.  Presuming, without deciding, that appellant still could have
timely made a record of points he wanted to cover in closing in his motion for
new trial or at the motion-for-new-trial hearing, appellant did not do so. 
There is nothing before this court indicating what issues, if any, appellant=s trial counsel
wanted to address but could not because of the trial court=s time
limitation.  On this record, we cannot determine whether the trial court
reversibly erred in limiting appellant=s closing argument
to five minutes.  See Barajas, 732 S.W.2d at 729.  Thus, we conclude
that appellant failed to preserve error as to his second issue. 

Having overruled both of appellant=s issues on
appeal, we affirm the trial court=s judgment. 

 

 

 

 

/s/      Kem Thompson Frost

Justice

 

 

 

 

Judgment rendered
and Opinion filed July 25, 2006.

Panel consists of
Justices Anderson, Edelman, and Frost.

Publish C Tex. R. App. P. 47.2(b).