Opinion issued May 13, 2010.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00446-CR

———————————

Patrick Jamal Living, Appellant

V.

State of
Texas, Appellee



 



 

On Appeal from the 232nd District Court

Harris County, Texas



Trial Court Case No. 1151200

 



 

MEMORANDUM OPINION

A jury convicted
appellant, Patrick Jamal Living, of the second-degree felony offense of
aggravated assault.  The trial court
sentenced him to twenty five years’ imprisonment.  On appeal, Living contends that the evidence is
factually insufficient to support a finding that he assaulted Mary Leroy with a
firearm and that the trial court erred in limiting his closing argument to
twenty minutes.  Finding no error, we
affirm.

Facts

In December 2007, Living and Leroy
were married, but had separated and were living in separate apartments in
northwest Houston.  Leroy invited Living
to spend the New Year’s holiday at her apartment.  After Living arrived, he and Leroy argued about
her suspicion that he was having an extramarital affair.  

On the morning of December 31,
Leroy, accompanied by her sisters, Leonarda and Lanadia, sought medical treatment
for welts that had appeared on her face and neck.  When Leroy and her sisters returned from the
hospital, Leroy went into her bedroom to discuss the results of the examination
with Living.  She told Living that,
according to the doctor, a sexually-transmitted disease had caused the welts.  Leroy again accused Living of cheating and asked
him to leave.  Living insisted that he
wanted to stay.  

When they heard the argument,
Leroy’s sisters entered the bedroom. 
Lanadia began to argue with Living. 
Leroy saw that Living was about to become violent and pulled Lanadia out
of the room.  Living chased after Lanadia,
grabbed her by the throat, and pushed her partway through the kitchen window,
breaking the glass.  Leroy and her other
sister, Leonarda, tried to stop Living from attacking Lanadia.  Leroy tried to push Living away, and when Living
began slamming Lanadia into the kitchen counter, Leonarda pounded Living with
her fists until he released Lanadia. 
Living then turned on Leonarda, hitting her with a side table and
throwing the television set at her.  After
the sisters armed themselves with the legs from the broken table, Living left
the apartment, telling them that he was going to get “that thing,” which Leroy
understood as a reference to his gun. 

Officer Semein of the Houston
Police Department and an ambulance came to the scene in response to a 911 call.  Leroy’s brother and cousin, who lived in the
same apartment complex, came over to discuss the situation with her.  Her brother commented that Leroy’s car was
missing, and Leroy realized that Living had taken her car.  Leroy’s cousin and brother offered to help
her locate the car, and the three left the complex in her brother’s green Ford
Explorer.  

As they headed back to the
apartment complex, Leroy’s brother, who was driving, received a telephone call
from Leonarda, who warned that Living had returned to the complex with a
gun.  As they approached the apartment entry
gate, Leroy saw Living standing near her apartment with a gun in his hand.  Fearing that Living would target her mother,
who also lived in the complex, Leroy had her brother turn the Explorer into a
parking lot on one side of the apartment and head back toward the entrance.  

As they approached Living for a
second time, Living pointed his gun at them. 
When Leroy’s brother reacted by backing up the Explorer, Living pointed
the gun toward them and fired.  Leroy
ducked under the dashboard as her brother continued to maneuver the Explorer
through the parking lot and out of the complex, and then he turned onto West
Tidwell.  Meanwhile, Living, in Leroy’s car,
drove out of a different exit and headed in the opposite direction on West
Tidwell toward the Explorer.  As Living
passed, he again shot the gun, hitting the back of the Explorer.  Leroy felt the bullet’s impact shake the
truck.  The jury heard that Leroy’s
brother refused to voluntarily submit to a police interview and generally was
uncooperative in the investigation. 

Officer Semein, a thirteen-year
veteran of the police department, testified that he arrived at the apartment
complex in response to a call about gunshots.   A man who identified himself as Alejandro
Aldrete approached him and stated that he had placed the 911 call.  Aldrete explained that he saw a tall, thin,
black man with a gun shoot at a green Ford Explorer, and he heard a total of
three gunshots.  Semein found a spent
bullet casing in the parking lot of the apartment complex.  

Semein did not hear any gunshots after
he arrived at the scene.  Semein’s report
did not mention that Living had a gun or that he had fired a gun.  Semein had a brief opportunity to visually
inspect the Explorer.  The Explorer had
holes in the door, but they looked rusty and old.  John Clary, who was repairing a vending
machine on the apartment complex premises at the time of the incident, testified
that a woman approached him and asked him to call 911 because a man was running
around the complex with a gun, but he did not either see a man with a gun or hear
any gunshot while he was there.  

Discussion

I.       Factual
Sufficiency of Aggravated Assault Finding

A.      Standard
of review

When conducting a factual
sufficiency review, we view all of the evidence in a neutral light.  Ladd v.
State, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999).  We will set aside the verdict only if (1) the
evidence is so weak that the verdict is clearly wrong and manifestly unjust or
(2) the verdict is against the great weight and preponderance of the evidence.  Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  In conducting a factual sufficiency review, we
must discuss the evidence that, according to the appellant, most undermines the
jury’s verdict.  See Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

We may not re-weigh the evidence
and substitute our judgment for that of the fact-finder.  King v.
State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).  The fact-finder alone determines the weight to
place on contradictory evidence because that determination depends on the
fact-finder’s evaluation of credibility and demeanor.  Cain v.
State, 958 S.W.2d 404, 408–09 (Tex. Crim. App. 1997).  The jury may believe or disbelieve some or all
of a witness’s testimony, even if that testimony is uncontradicted, and is the
sole judge of the weight and credibility of witness testimony.  Hernandez
v. State, 161 S.W.3d 491, 501 (Tex. Crim. App. 2005).  The testimony of a single eyewitness can be
factually sufficient to support a conviction. 
Bowden v. State, 628 S.W.2d
782, 784 (Tex. Crim. App. 1982).  

B.      Aggravated assault

Living contends that the evidence
was factually insufficient to prove that he threatened Leroy with a firearm.  To support a charge of aggravated assault, the
State must prove beyond a reasonable doubt that the defendant (1) intentionally or knowingly threatened
another, (2) with imminent bodily injury, (3) while using or exhibiting a
deadly weapon, here, a firearm.  See Tex.
Penal Code Ann. §§ 22.01(a)(2), 22.02(a)(2) (Vernon Supp. 2009); Hall v. State, 225 S.W3d 524, 431 (Tex.
Crim. App. 2007) (observing that “aggravated assault may be committed by threat
with a deadly weapon”).  Living contends
that (1) none of the witnesses gave a detailed description of the gun; (2)
while the State’s witnesses testified that Living fired the gun at the
Explorer, the only physical evidence of holes in the truck appeared to be old
and rusty; and (3) the testimony proved only that Living fired in the general
direction of the Explorer, not that he ever pointed the gun specifically at
Leroy with the intent of threatening her. 
Living also observes that the
State’s witnesses had significant credibility problems, speculating that
Leroy’s marital problems with Living influenced her testimony.  For these reasons, Living asks that we find
the evidence to be factually insufficient.

We turn first to Living’s
contention that the State failed to prove that he intended to threaten Leroy
with the deadly weapon.  Leroy testified
that Living had a gun, pointed it at her, and fired.  Leonarda also testified that she saw Living with
a gun and that she heard a gunshot.  In
addition, Aldrete testified that he heard three gunshots and saw a person fire
a gun at a green Explorer.  Testimony
from a complainant in close proximity to a weapon, describing it as a “gun,” a
“revolver,” and a “pistol,” is sufficient to prove the use of a deadly weapon.  Wright
v. State, 591 S.W.2d 458, 459 (Tex. Crim. App. 1979); Leadon v. State, Nos. 01-08-00839-CR, 01-08-00840-CR, 2010 WL
143467, at *8 (Tex. App.—Houston [1st Dist.] Jan. 14, 2010) (no pet. h.). 

With respect to evidence that
Living threatened Leroy, we observe that Leroy testified that Living stated
that he was going to get his gun, and that he returned with the gun and pointed
it at her.  Leroy ducked down in the
Explorer in fear and apprehension.  Intent
may be inferred from the circumstantial evidence surrounding and incident
including the acts, words, and conduct of the accused.  Guevara
v. State, 152 S.W.3d 45, 49–50 (Tex. Crim. App. 2004).  The evidence, viewed in a neutral light,
supports an inference that Living intentionally threatened Leroy with a firearm.  

Living also charges that the
State’s witnesses, particularly Leroy, had “significant credibility
problems.”  Living, however, does not point
to any testimony that is demonstrably false but relied on by the jury.  We may not revisit the jury’s credibility
determinations in conducting a factual sufficiency review.  See
Wilson v. State, 863 S.W.2d 59, 65–66 (Tex. Crim. App. 1993).  We hold that the evidence is factually
sufficient to support the jury’s finding that Living committed aggravated
assault.  

II.      Time
Limit for Closing Argument

Living contends that the trial
court erred in limiting his closing argument to twenty minutes, which was
inadequate to present his defensive arguments and thereby caused him prejudice.  The trial court is vested with broad
discretion in limiting the duration of closing arguments.  Hernandez
v. State, 506 S.W.2d 884, 886 (Tex. Crim. App. 1974).  In Dang
v. State, the Court of Criminal Appeals set out several non-exclusive factors
to consider in determining the reasonableness of the time limit imposed on
closing argument.  154 S.W.3d 616, 621 (Tex.
Crim. App. 2005).  These include: (1) the
quantity of the evidence; (2) the duration of the trial; (3) conflicts in the
testimony; (4) the seriousness of the offense; (5) the complexity of the case;
(6) whether counsel used the time allocated efficiently; and (7) whether
counsel set out what issues were not discussed because of the time
limitations.  Id. 

The trial in this case took less
than three days and included the testimony of six witnesses.  The State finished its closing argument in nine
minutes.  Although aggravated assault is
a first-degree felony, and thus a serious offense, the issues in dispute were
straightforward.  Living has not
identified any point that defense counsel failed to make in closing because of
the time constraint.  Based upon the relatively
small number of witnesses, the lack of complexity, and the absence of any defensive
issue which required more time to discuss in closing argument, we hold that the
trial court acted within its discretion by allocating twenty minutes for each closing
argument.  See id.

Conclusion

We hold that the evidence is
factually sufficient to support Living’s conviction for assault with a firearm
and that the trial court did not err by limiting the time for closing
argument.  We therefore affirm the
judgment of the trial court. 

 

                                                                   Jane Bland

                                                                   Justice


 

Panel consists
of Justices Jennings, Hanks, and Bland.

 

Do not
publish.   Tex. R. App. P. 47.2(b).