

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00163-CR

_____

BRENDA VANDERBURG, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th Judicial District Court
Lamar County, Texas
Trial Court No. 23854

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

Brenda Vanderburg was indicted for engaging in organized criminal activity (Count One) and possession of chemicals with the intent to manufacture a controlled substance (Count Two). As part of an open plea of guilty, Vanderburg pled guilty to Count One of the indictment and the State abandoned Count Two. The trial court found Vanderburg guilty and assessed twenty years' imprisonment.

On appeal, Vanderburg contends that the trial court erred in finding her guilty because the State failed to introduce legally sufficient evidence to support the guilty plea. We affirm the trial court's judgment because there is sufficient evidence to support the trial court's finding of guilty.

I.      Factual Background

On May 14, 2010, Anson Amis, a narcotics investigator for the Lamar County Sheriff's Department, noticed that an emergency call had been made regarding a child swallowing lighter fluid or camping fuel at the Vanderburg residence. There was already an ongoing narcotics investigation of Vanderburg and her son, Terry Trapp, and his girlfriend, Jaclyn Genzel, who lived at the Vanderburg residence in Chicota, Lamar County, Texas.

According to the pharmacy logs, over the previous year, Vanderburg, Trapp, and Genzel each made multiple purchases of pseudoephedrine at different pharmacies in the area, sometimes on the same day, and, at times, purchasing more than the legal limit. Based on the pharmacy logs

2

and the emergency call regarding the child, the sheriff's department obtained and served a search warrant at the Vanderburg residence.

Behind the residence was a shop building. Because the shop was locked, bolt cutters were used to remove the lock and enter the shop. The shop contained: a small stove, a bottle of heat (methyl alcohol), three containers of camping fuel, a bottle of sulfuric acid, a bottle of muriatic acid, a hot plate, a pyrex dish, coffee filters, a Coke bottle filled with salt, and a drinking glass containing a liquid. Upon testing, it was discovered that the liquid in the glass would yield one to three grams of methamphetamine. The shop also contained a camera system and an emergency response guidebook. Between the shop and the residence, Amis found a burn pile, where he found blister packs from cold medicine and glass jars.

In a back area of the residence, which had been closed off to make a bedroom for Trapp, Genzel, and her child, the police found a handwritten shopping list for "[g]loves, batteries, 2/48's, which [was] a 48-count box of pseudoephedrine." Amis also found a package of syringes and a spoon.

Amis and the officers then searched the kitchen and main living room area of the residence. The police found an unlocked personal safe on the living room floor. Inside the safe, "there was some drug paraphernalia, pseudoephedrine blister packs," digital scales, as well as a baggy containing "a little over a gram" of methamphetamine.

## II. Sufficiency of Evidence to Support a Guilty Plea

In her two points of error, Vanderburg argues that the trial court erred in finding her guilty because the State failed to introduce legally sufficient evidence to support her guilty plea.

A guilty plea must be supported by evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 1.15 (West 2005); *Menefee v. State*, 287 S.W.3d 9, 13 (Tex. Crim. App. 2009). Evidence offered in support of a guilty plea may take many forms. *Menefee*, 287 S.W.3d at 13. A stipulation of evidence will suffice to support a guilty plea so long as it embraces every constituent element of the charged offense. *Id.*

In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was

tried." *Id*. This standard can be uniformly applied to all trials, whether to the bench or to the jury, and whether or not the indictment is facially complete.

Engaging in organized criminal activity is defined by Section 71.02(a)(5) of the Texas Penal Code as:

> (a)      A person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, the person commits or conspires to commit one or more of the following:
>
>        . . . .
>
> (5)      unlawful manufacture, delivery, dispensation, or distribution of a controlled substance or dangerous drug, or unlawful possession of a controlled substance or dangerus drug through forgery, fraud, misrepresentation, or deception.

TEX. PENAL CODE ANN. § 71.02(a)(5) (West Supp. 2011).

A combination means three or more persons who collaborate in criminal activities, even though the participants may not know the others' identities, the membership may change from time to time, and the participants may stand in a wholesale-retailer or other arm's-length relationship in illicit distribution operations. *See* TEX. PENAL CODE ANN. § 71.01(a) (West Supp. 2011). The offense of engaging in organized criminal activity requires that "the actor must not only agree to participate but must himself perform some overt act in pursuance of that agreement." *Barber v. State*, 764 S.W.2d 232, 235 (Tex. Crim. App. 1988); *Pardue v. State*, 252 S.W.3d 690 (Tex. App.—Texarkana 2008, no pet.); *State v. Mauldin*, 63 S.W.3d 485, 487 (Tex. App.—Tyler 2001, pet. ref'd). The overt act, though, "need not be criminal in itself" and "acts that suffice for

5

party liability—those that encourage, solicit, direct, aid, or attempt to aid the commission of the underlying offense—would also satisfy the overt act element of section 71.02." *Otto v. State*, 95 S.W.3d 282, 284 (Tex. Crim. App. 2003) (footnote omitted); *In re L.A.S.*, 135 S.W.3d 909, 919 (Tex. App.—Fort Worth 2004, no pet.). "[T]o secure a conviction for engaging in organized crime, the State had to prove that Vanderburg:   1) with intent to establish, maintain, or participate in a combination or in the profits of a combination and 2) committed or conspired to commit one or more predicate offenses." *Munoz v. State*, 29 S.W.3d 205, 208 (Tex. App.—Amarillo 2000, no pet.) (quoting TEX. PENAL CODE ANN. § 71.02(a)); *see Barber*, 764 S.W.2d at 235.

The issue here is whether the evidence before the trial court was sufficient to support Vanderburg's guilt.   Vanderburg pled guilty in open court; however, the signed judicial confession does not appear as an exhibit in the reporter's record.   At the outset of the trial, the following relevant exchanges took place between the court and Vanderburg:

> THE COURT:   Mrs. Vanderburg, I'm looking at a document that's dated today.   It's entitled Written Plea Admonishments.   It's identified as State's Exhibit Number 1.   It bears you and your attorney's Mr. Massar, signature.   I'm going to show you this document. . . . Do you recall signing this document?

> [VANDERBURG]:   Yes, sir.

> . . . .

> THE COURT:   You do understand that you're waiving -- the jury is sitting over there in the jury right now and you're waiving your right to a jury trial?   My understanding is you're going to enter a plea of guilty, is that correct?

> [VANDERBURG]:   Yes, sir.

6

. . . .

       THE COURT:  In this document, your written plea admonishment, there is a judicial confession where . . . your confession to Count 1, which is engaging in organized criminal activity.  Do you understand that?

       [VANDERBURG]:  Yes, sir.

       THE COURT:  By signing that judicial confession and this document, you're agreeing that this document will be the only evidence the State of Texas will need to produce to prove your guilt in this matter.  Do you understand that?

       [VANDERBURG]:  Yes.

    . . . .

       THE COURT:  The Court will admit into evidence State's Exhibit Number 1.

A document marked as State's Exhibit 1 entitled Written Plea Admonishments, containing a judicial confession signed by Vanderburg and her attorney, appears in the clerk's record.

Vanderburg argues that the confession is not evidence because it is neither included among the trial exhibits, nor did the trial court take judicial notice of it as part of the clerk's record. *See McDougal v. State*, 105 S.W.3d 119 (Tex. App.—Fort Worth 2003, pet. ref'd).  We disagree.

In *Pitts v. State*, the defendant's confession was offered into evidence and admitted as State's Exhibit Number 1; however, the reporter's record (then known as the statement of facts) did not include the confession among the exhibits from trial.  916 S.W.2d 507, 510 (Tex. Crim. App. 1996).  The confession was included in the record as a part of the clerk's record (transcript).

7

*Id.* Finding that the written judicial confession contained in the clerk's record was the same one admitted into evidence at trial, the Texas Court of Criminal Appeals held that the confession was evidence which supported the guilty plea. *Id.*

The facts of this case are very similar to those of *Pitts.* Here, the trial court identified the document, marked as State's Exhibit Number 1, entitled as Written Plea Admonishments, containing a written confession, and signed by both Vanderburg and her attorney. At trial, "State's Exhibit Number 1" was offered into evidence and admitted. A document perfectly matching that description appears in the clerk's record. Accordingly, we find that the confession contained in the clerk's record is the same one referred to by the trial court and admitted into evidence, and therefore it was evidence of Vanderburg's guilt.

The remaining evidence also supports Vanderburg's conviction. Vanderburg admitted that she owned the residence in Chicota, that the shop belonged to her and her husband, and that Trapp "had the keys to the shop." She testified that she did not know what was in the shop and that at the time of the search, her primary residence was with her boyfriend in Oklahoma.[1] However, she received mail at the residence, as Amis, the investigator, saw mail in the house addressed to Vanderburg at the Chicota residence's address, and Vanderburg told the officers that she had tried to clean up the items in the shop after the child ingested the camping fuel. The State

---

[1]Genzel testified that Vanderburg was gone a lot.

asked Vanderburg if there was a certain point that she understood that Trapp was manufacturing methamphetamine, and she answered, "I've understood it, yes."

Detective Tommy Moore,[2] a detective at the Paris Police Department, who had previously been assigned to the Red River Valley Drug Task Force, had reviewed Amis' report, and he testified that what Amis found at the residence was "the remnants of a meth lab."  Amis testified that the area in the shop was "an area that you can tell someone was using quite often." According to Moore, "you've got someone allowing and someone participating in the manufacturing of methamphetamine," as all the ingredients to make methamphetamine had to have been there at some point because the liquid found in the shed was the liquid form of methamphetamine.  However, none of Vanderburg's personal items were found in the shop, the glass of methamphetamine could not be affirmatively linked to her, and Genzel testified that the glass of methamphetamine belonged to her and Trapp.

Amis testified that the items on the shopping list found in Trapp and Genzel's locked bedroom[3] were needed to make methamphetamine.  The items on the list—gloves, batteries, and pseudoephedrine—were not found in the shop.  Moore testified that pseudoephedrine pills are the main ingredient in making methamphetamine.

---

[2]Moore had specialized training related to the manufacture of methamphetamine.

[3]No drug paraphernalia was found in Vanderburg's bedroom, the kitchen, or the residence's third bedroom.

9

The pharmacy logs show that during the twenty-two-week period between December 2009 and May 14, 2010, Vanderburg[4] purchased pseudoephedrine twelve times.[5] Vanderburg admitted to the purchases, claiming that she made the purchases because she was asked to do so. She said she purchased it for legitimate reasons, as two of her children had polyp problems and the doctor had prescribed it for one of her sons. Vanderburg denied knowing that Trapp and Genzel were manufacturing methamphetamine with the products she bought.

The unlocked safe found on the living room floor contained a small amount of methamphetamine, drug paraphernalia, and pseudoephedrine blister packs. It also contained a piece of paper with only Trapp's handwriting on it, as well as needles that matched those found in Trapp's bedroom. Vanderburg did not have a key to the safe.

Three days prior to the search of the residence, Vanderburg had tested positive for methamphetamine. Vanderburg admitted to using methamphetamine on two occasions, but she said she ended up in the hospital due to an allergic reaction to the substance. Genzel had only seen Vanderburg use methamphetamine two or three times and never saw her manufacture it. She testified that Vanderburg did not use the methamphetamine that Trapp manufactured.

Here, methamphetamine was found in the shop, and there is strong evidence that the shop was used to manufacture the drug. Vanderburg owned the residence and received mail there. Trapp and Genzel also lived at the residence. Vanderburg used methamphetamine and, as per

[4]Vanderburg denied that some of the signatures for the pseudoephedrine purchases were hers.

[5]Genzel testified that she (Genzel) and Trapp were the primary purchasers of pseudoephedrine.

Trapp's request, repeatedly purchased the primary ingredient for manufacturing it. At one point, she became aware that Trapp was manufacturing methamphetamine. Vanderburg had access to the shop because she attempted to clean it up after the child swallowed the camping fuel, and she had access to the unlocked safe that contained methamphetamine and drug paraphernalia. From this evidence, together with Vanderburg's judicial confession, it can be reasonably found or inferred that Vanderburg, Trapp, and Genzel participated in a "combination" and committed or conspired to commit the offense of manufacturing methamphetamine.

We overrule the two points of error and affirm the trial court's judgment.


Jack Carter
Justice


Date Submitted:     March 8, 2012
Date Decided:      April 12, 2012


Publish

11