ACCEPTED
06-14-00114-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
2/10/2015 11:42:58 AM
DEBBIE AUTREY
CLERK

**ORAL ARGUMENT WAIVED**

CAUSE NO. 06-14-00114-CR

IN THE

COURT OF APPEALS

SIXTH APPELLATE DISTRICT OF TEXAS AT TEXARKANA

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
2/10/2015 11:42:58 AM
DEBBIE AUTREY
Clerk

_____

RANDYEAL DONTRELL TYSON, Appellant

lV.

THE STATE OF TEXAS, Appellee

_____

ON APPEAL FROM THE COUNTY COURT AT LAW
LAMAR COUNTY, TEXAS
TRIAL COURT NO. 61504; HONORABLE BILL HARRIS, JUDGE

_____

# APPELLEE'S (STATE'S) BRIEF

_____

Gary D. Young, County and District Attorney
Lamar County and District Attorney's Office
Lamar County Courthouse
119 North Main
Paris, Texas   75460
(903) 737-2470
(903) 737-2455 (fax)

ATTORNEYS FOR THE STATE OF TEXAS

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Tex. R. App. P. 38.2(a)(1)(A), the list of parties and counsel is not required to supplement or correct the appellant's list.

# TABLE OF CONTENTS

**PAGE:**

IDENTITY OF PARTIES AND COUNSEL . . . . . . . . . . . .     i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . .     ii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . .     iv

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . .     vii

STATEMENT REGARDING ORAL ARGUMENT . . . . .     viii

ISSUE PRESENTED IN REPLY. . . . . . . . . . . . . . . . . . . .     ix

INTRODUCTION    . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . .     2

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . .     10

ARGUMENT AND AUTHORITIES

        **ISSUE PRESENTED IN REPLY NO. 1:**   **VIEWED
        IN THE LIGHT MOST FAVORABLE TO THE
        JURY'S VERDICT, THE EVIDENCE WAS LEGALLY
        SUFFICIENT FOR A RATIONAL JURY TO HAVE
        FOUND THE ESSENTIAL ELEMENTS OF THEFT
        BEYOND A REASONABLE DOUBT.** . . . . . . . . .     11

        **ISSUE PRESENTED IN REPLY NO. 2:**  **THE TRIAL
        COURT DID NOT ABUSE ITS DISCRETION IN
        DETERMINING THE LENGTH OF ARGUMENTS
        DURING THE APPELLANT'S TRIAL.** . . . . . . . .     16

**ISSUE PRESENTED IN REPLY NO. 3: THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DETERMINING THE LENGTH OF ARGUMENTS DURING THE APPELLANT'S TRIAL IN ALLEGED CONTRAVENTION OF HIS SIXTH AMENDMENT RIGHT TO COUNSEL.** . . . . . . . . . . . . . . . . . . . . . .     21

**ISSUE PRESENTED IN REPLY NO. 4: THIS COURT SHOULD ORDER THE SUPPLEMENTATION OF THE CLERK'S RECORD TO INCLUDE A CERTIFIED BILL OF COSTS.** . . . . . . . . . . . . . . . . . . . . . . . . . . .     22

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     25

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . .     26

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . .     27

# INDEX OF AUTHORITIES

**CASES:**                                                          **PAGE:**

*Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim.
App. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,16

*Arevalo v. State*, 835 S.W.2d 701, 707 (Tex. App.--Houston
[14th Dist.] 1992, no pet.) . . . . . . . . . . . . . . . . . . . . . 20

*Baldwin v. New York*, 399 U.S. 66, 68, 69; 90 S.Ct. 1886; 26
L. Ed. 2d 437 (1970) . . . . . . . . . . . . . . . . . . . . . . . . 19

*Barnett v. State*, 344 S.W.3d 6, 13 (Tex. App.--Texarkana
2011, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,16

*Brooks v. State*, 323 S.W.3d 893, 912, 917-918 (Tex.
Crim. App. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Cardenas v. State*, 402 S.W.3d 377, 382, 383, 385, 397, 399
(Tex. App.-- Houston [1st Dist.] 2013) (opinion on rehearing),
*aff'd*, 423 S.W.3d 396 (Tex. Crim. App. 2014) . . . . 22,23,24

*Christopher Michael Lindgren v. The State of Texas*, No.
01-12-00083-CR, 2013 Tex. App. LEXIS 2415,
2013 WL 978257, at * 3 (Tex. App.--Houston [1st Dist.]
March 12, 2013, no pet.) (mem. op., not designated
for publication) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim.
App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Dang v. State*, 154 S.W.3d 616, 619, 621, 621 n. 22; 622,
623 (Tex.Crim. App. 2005) . . . . . . . . . . . . . . . . . . . 16,17,20,21

*Dang v. State*, 202 S.W.3d 278, 280, 281 (Tex. App. –
Houston [14th Dust,} 2006, no pet.) . . . . . . . . . . . . . 21,22

| CASES: | PAGE: |
|---|---|

*District of Columbia v. Clawans*, 300 U.S. 617,
628 (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Hernandez v. State*, 506 S.W.2d 884, 886 (Tex Crim.
App. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.--
Texarkana 2010, pet. ref'd) . . . . . . . . . . . . . . . . . . . . 12

*Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim.
App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Jackson v. Virginia*, 443 U.S. 307, 318, 319, 99 S.Ct. 2781,
61 L.Ed.2d 560 (1979) . . . . . . . . . . . . . . . . . . . . . . . 12

*Lewis v. State*, 126 S.W.3d 572, 575 (Tex. App.--
Texarkana 2004, pet. ref'd) . . . . . . . . . . . . . . . . . . . . 14,16

*Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim.
App. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Pitte v. State*, 102 S.W.3d 786, 794 (Tex. App.--Texarkana
2003, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,16

*Rickie Renarld Goodie v. The State of Texas*, No. 01-12-00531,
2013 Tex. App. LEXIS 15284, at * 7 (Tex. App.--Houston
[1st Dist.] December 19, 2013, pet. ref'd) (mem. op.,
not designated for publication) . . . . . . . . . . . . . . . . . 14

*Robinson v. State*, 415 S.W.2d 180, 182 (Tex. Crim.
App. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Vanderburg v. State*, 365 S.W.3d 712, 714 (Tex. App.--
Texarkana 2012, no pet.) . . . . . . . . . . . . . . . . . . . . . . 12

**CASES:**                                                    **PAGE:**

W*ilson v. State*, 391 S.W.3d 131, 135 (Tex. App.--
    Texarkana 2012, no pet.) . . . . . . . . . . . . . . . . . . . . .  12,13

*Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim.
    App. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14


**STATUTES:**                                                 **PAGE:**

TEX. PENAL CODE ANN. 12.22 (West Supp. 2014). . . . .  18

TEX. R. APP. P. 34.5(c)(1) . . . . . . . . . . . . . . . . . . . . . . . .  23,24

TEX. R. APP. P. 34.5(c)(3) . . . . . . . . . . . . . . . . . . . . . . . .  23,24

TEX. R. APP. P. 38.1(1) . . . . . . . . . . . . . . . . . . . . . . . . . . .  21,22

TEX. R. APP. P. 38.2(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . .  i

TEX. R. APP. P. 44.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23,24

TEX. R. EVID. 611 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

## STATEMENT OF THE CASE

This is a criminal appeal from the trial court's final judgment and sentence. *See* CR, pgs. 71-73.

After a jury trial, a Lamar County jury found the appellant, Tyson, guilty of the misdemeanor offense of theft of property of the value of $50.00 or more but less than $500.00. *See* Tex. Penal Code Ann. § 31.03 (West 2013). By its unanimous verdict, the same jury assessed punishment at imprisonment in the Lamar County Jail for a term of 100 days and assessed a fine in the amount of $432.00 along with restitution in the amount of $88.00. *See* RR, Vol. 4, pg. 51; CR, pg. 67.

On June 27, 2014, the trial court signed its final judgment of conviction. *See* CR, pgs. 71-73. Tyson timely filed his notice of appeal. *See* CR, pg. 74. By this appeal, Tyson raised four (4) issues/points of error.

## STATEMENT REGARDING ORAL ARGUMENT

The State will waive oral argument.  *See* Tex. R. App. P. 38.2.

## ISSUES PRESENTED IN REPLY

**ISSUE PRESENTED IN REPLY NO. 1**:  VIEWED IN THE LIGHT MOST FAVORABLE TO THE JURY'S VERDICT, THE EVIDENCE WAS LEGALLY SUFFICIENT FOR A RATIONAL JURY TO HAVE FOUND THE ESSENTIAL ELEMENTS OF THEFT BEYOND A REASONABLE DOUBT.

**ISSUE PRESENTED IN REPLY NO. 2**:  THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DETERMING THE LENGTH OF ARGUMENTS DURING THE APPELLANT'S TRIAL.

**ISSUE PRESENTED IN REPLY NO. 3**:  THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DETERMING THE LENGTH OF ARGUMENTS DURING THE APPELLANT'S TRIAL IN ALLEGED CONTRAVENTION OF HIS SIXTH AMENDMENT RIGHT TO COUNSEL.

**ISSUE PRESENTED IN REPLY NO. 4**:  THIS COURT SHOULD ORDER THE SUPPLEMENTATION OF THE CLERK'S RECORD TO INCLUDE A CERTIFIED BILL OF COSTS.

CAUSE NO. 06-14-00114-CR

IN THE

COURT OF APPEALS

SIXTH APPELLATE DISTRICT OF TEXAS AT TEXARKANA
_____

RANDYEAL DONTRELL TYSON, Appellant

lV.

THE STATE OF TEXAS, Appellee
_____

ON APPEAL FROM THE COUNTY COURT AT LAW
LAMAR COUNTY, TEXAS
TRIAL COURT NO. 61504; HONORABLE BILL HARRIS, JUDGE
_____

# APPELLEE'S (STATE'S) BRIEF
_____

TO THE HONORABLE SIXTH COURT OF APPEALS AT
TEXARKANA:

COMES NOW, the State of Texas, by and through the elected County
and District Attorney of Lamar County, Gary D. Young, and the Lamar
County and District Attorney's Office, respectfully submits its Appellee's
(State's) Brief under Rule 38.2 of the Texas Rules of Appellate Procedure.

Unless otherwise indicated, Randyeal Dontrell Tyson will be referred

-1-

to as "the appellant" or "Tyson" and the State of Texas as "the State."

## STATEMENT OF FACTS

**Factual Background.**

On December 6, 2013, Dustin Calhoun (Calhoun), who worked for Wal-Mart for seven years, was on duty in asset protection (RR, Vol. 4, pg. 106-108, 114) and dressed in "just a plain brown jacket" or "just plain civilian clothes" (RR, Vol. 4, pg. 38), when there was an incident in the evening. *See* RR, Vol. 4, pgs. 35-36, 37 ("just one" incident). It was "not busy" that evening. *See* RR, Vol. 4, pg. 106. Calhoun was working alone. *See* RR, Vol. 4, pg. 106.

According to Calhoun, Tyson was in Wal-Mart earlier that day with another gentlemen. *See* RR, Vol. 4, pg. 37. Wal-Mart was in Lamar County. *See* RR, Vol. 4, pg. 138.

A few hours later, Calhoun saw Tyson again, as he was coming from a red Mustang. *See* RR, Vol. 4, pg. 112. Calhoun watched Tyson, who was with a female. *See* RR, Vol. 4, pgs. 37, 71. The time stamp on the surveillance video was 8:42 p.m. *See* RR, Vol. 4, pgs. 48, 103, 105; State's Exhibit 2 (surveillance video).

Later, in the cosmetics department (RR, Vol. 4, pg. 69), the time was

9:06 p.m. (RR, Vol. 4, pgs. 71, 104-105), when they started selecting merchandise at a high rate of speed. *See* RR, Vol. 4, pgs. 37, 69 ("speedily, hastily picking things off the shelf"), 75, 77. *See also* RR, Vol. 4, pg. 72 ("She's grabbing a handful of stuff"). That gave notice to Calhoun that "they're probably not going to pay for it." *See* RR, Vol. 4, pg. 37. Calhoun could "see it all from the purses." *See* RR, Vol. 4, pg. 73.

Calhoun began to follow them and watched them select cosmetics, perfume and deodorant "over by the shampoo and stuff." *See* RR, Vol. 4, pgs. 37, 53. They went over to the purses (RR, Vol. 4, pgs. 37, 67), where there is no video in the purses. *See* RR, Vol. 4, pgs. 65-66. Tyson had a razor; it was in a sealed plastic container. *See* RR, Vol. 4, pg. 37. Tyson "ripped up the plastic, broke all the pieces off of it, left it down in the buggy, concealed it down in -- into his pocket with some other merchandise that was in the buggy that they selected with another female." *See* RR, Vol. 4, pg. 38. *See also* RR, Vol. 4, pg. 56.

They then went out and around the jewelry department and went out the door, passing the registers. *See* RR, Vol. 4, pg. 38. They did not stop and pay for the items. *See* RR, Vol. 4, pg. 57.

Calhoun followed them, and they looked back as soon as they got to

the last door.  *See* RR, Vol. 4, pg. 38.  *See also* RR, Vol. 4, pg. 89 ("They don't run until they get outside that second door.").  They took off running to their car.  *See* RR, Vol. 4, pgs. 38, 58.  Calhoun called "PD."  *See* RR, Vol. 4, pgs. 38-39, 40, 90.  Calhoun started following them out to the parking lot.  *See* RR, Vol. 4, pg. 38, 48, 58; State's Exhibit 2.  They were going to a vehicle (RR, Vol. 4, pgs. 59, 90), but did not get into their vehicle.  *See* RR, Vol. 4, pgs. 38, 41.  "They just touched it."  *See* RR, Vol. 4, pg. 119.  Then, they left.  *See* RR, Vol. 4, pg. 119.

"It was a red Mustang."  *See* RR, Vol. 4, pg. 40.  *See also* RR, Vol. 4, pgs. 50, 59, 113; State's Exhibit 2.  Calhoun could not remember the license plate (RR, Vol. 4, pg. 60), but he did get the tag number and give it to the police.  *See* RR, Vol. 4, pg. 120.

They then took off running through the trailer parks.  *See* RR, Vol. 4, pgs. 38, 40, 59, 113.  Calhoun continued to follow them, as they ran to the trailer park giving the police the description of which way they were going.  *See* RR, Vol. 4, pg. 41.  Calhoun didn't see them dump anything out.  *See* RR, Vol. 4, pgs. 102-103.

Afterwards, Calhoun had "to go burn the video" (RR, Vol. 4, pgs. 41, 46-47) and get a "training" receipt for the officer.  *See* RR, Vol. 4, pgs. 41,

44; State's Exhibit 1. The date on the "training" receipt was 12/6 of '13. *See* RR, Vol. 4, pg. 45.

The stolen items were the *Old Spice* deodorant, the toothbrush holders, the *Maybelline* eye, the perfume *Curve Crush*, the *CoverBlend* makeup, the *Maybelline* eye makeup and the razor Fusion styler. *See* RR, Vol. 4, pgs. 45-46, 111. *See also* RR, Vol. 4, pgs. 66, 116-118. According to Calhoun, they selected way more than what's on that receipt. *See* RR, Vol. 4, pg. 69. Calhoun didn't put all the merchandise on there, no. *See* RR, Vol. 4, pg. 112. The total on the receipt before tax was $87.91. *See* RR, Vol. 4, pg. 111. According to Calhoun, "yes, makes it a Class B" misdemeanor. *See* RR, Vol. 4, pg. 119.

**Arrival of Law Enforcement.**

On the night of December 6th (RR, Vol. 4, pg. 126), officer Jeremy Duerksen (Officer Duerksen) answered a call at Wal-Mart that evening, "somewhere around 2100 hours." *See* RR, Vol. 4, pg. 128. Officer Duerksen spoke with the complainant, the reporting party, who he believed was Dustin Calhoun. *See* RR, Vol. 4, pg. 128.

Upon being provided still photographs of the suspects on the scene, Officer Duerksen was able to determine who they were and later made

contact with them to verify their identity. *See* RR, Vol. 4, pgs. 129, 131. They were both at their residence in the city limits. *See* RR, Vol. 4, pg. 129.

From the still photographs and the video, Officer Duerksen also saw the subjects arriving on scene in the parking lot in a vehicle, and he was able to obtain the vehicle registration from that vehicle. *See* RR, Vol. 4, pg. 131. The registration address returned to the location in which the subjects were located. *See* RR, Vol. 4, pg. 131.

Officer Duerksen had been given a copy of the video from Wal-Mart, and he watched it prior to making contact with the suspects at the location of the residence. *See* RR, Vol. 4, pg. 146. Officer Duerksen observed them "conceal items" in the cosmetics area. *See* RR, Vol. 4, pg. 147.

Once the vehicle had left the scene, Officer Duerksen went by the house approximately two times before the vehicle arrived on scene. *See* RR, Vol. 4, pgs. 132, 135 ("I know it was a red or maroon Ford Mustang."). *See also* State's Exhibit 3. "[I]t was just a couple of hours, two or three hours before they were back at the house." *See* RR, Vol. 4, pg. 132. The vehicle was parked at a house across the street. *See* RR, Vol. 4, pg. 141.

Officer Duerksen went to the house. *See* RR, Vol. 4, pg. 129. As he approached the front door, there was a large window at lease five foot wide.

*See* RR, Vol. 4, pg. 141. The blinds were not completely closed. *See* RR, Vol. 4, pg. 141. Officer Duerksen looked through the window, as he was standing and knocking at the door. *See* RR, Vol. 4, pg. 141.

Officer Duerksen spoke to the father. *See* RR, Vol. 4, pg. 141. This man had a door wide open, using a hand gesture as -- to enter. *See* RR, Vol. 4, pgs. 142, 145. Officer Duerksen had the impression that the mother and father had been in bed. *See* RR, Vol. 4, pg. 142.

The female subject ran to the back of the house. *See* RR, Vol. 4, pgs. 129-130. The male subject was wearing the same clothing that Officer Duerksen observed in the still photographs that he initially saw. *See* RR, Vol. 4, pg. 130.

The father went back and found both of the subjects hiding in the back of the residence. *See* RR, Vol. 4, pg. 143. Officer Duerksen did not go further back into the house. *See* RR, Vol. 4, pg. 144.

**<u>Jury Trial</u>.**

On June 25, 2014, the trial court called the cause number 61504 for a jury trial and took up some pre-trial matters. *See* RR, Vol. 4, pg. 5. Following the pre-trial matters (RR, Vol. 4, pgs. 5-23), the trial court provided instructions to the petit jury. *See* RR, Vol. 4, pgs. 24-31.

The State then read the charging instrument to the jury. *See* RR, Vol. 4, pgs. 31-32; CR, pg. 8. Tyson entered a plea of "not guilty." *See* RR, Vol. 4, pg. 32.

The State called Calhoun, as its first witness. *See* RR, Vol. 4, pg. 35. During his direct-examination, Calhoun identified Tyson in "the black shirt right there with the glasses on." *See* RR, Vol. 4, pg. 57.

At the conclusion of Calhoun's testimony (RR, Vol. 4, pg. 120), the State called Officer Duerksen as its next witness. *See* RR, Vol. 4, pg. 126. Officer Duerksen was also able identify Tyson in a "black t-shirt with white writing on it." *See* RR, Vol. 4, pg. 131. Following the testimony of Officer Duerksen, the State rested. *See* RR, Vol. 4, pg. 149.

Afterwards, Tyson moved for a directed verdict, and the trial court denied the motion. *See* RR, Vol. 4, pg. 150. The defense presented its case-in-chief, which included the testimony of Kimber Renee Tyson, the wife. *See* RR, Vol. 4, pg. 153. Following her testimony (RR, Vol. 4, pgs. 152-190), both sides rested and closed. *See* RR, Vol. 4, pg. 190.

After preparing a proposed charge, the trial court heard "no objections" from the State or the defense. *See* RR, Vol. 4, pg. 191. The trial court then read the charge of the court to the jury. *See* RR, Vol. 4, pgs. 192-

201; CR, pgs. 59-63.

Following closing arguments, the jury retired for its deliberations.  *See* RR, Vol. 4, pg. 214.  While the trial court awaited the jury's verdict, defense counsel for Tyson objected "to being cut off in closing argument."  *See* RR, Vol. 4, pg. 216.  In due course, the jury returned a verdict; and by its verdict, the jury found Tyson guilty of the offense of theft of property of $50.00 or more but less than $500, as charged in the information.  *See* RR, Vol. 4, pg. 220; CR, pg. 63.

At the conclusion of the punishment phase, which was brief in duration (RR, Vol. 4, pgs. 220-230), both sides rested and closed.  *See* RR, Vol. 4, pg. 230.  The trial court then read its punishment charge to the jury. *See* RR, Vol. 4, pgs. 231-237; CR, pgs. 64-66.

Following closing arguments, the jury returned a verdict.  *See* RR, Vol. 4, pg. 251; CR, pg. 67.  By its verdict, the jury assessed punishment at imprisonment in the Lamar County Jail for a term of 100 days and assessed a fine in the amount of $432.00 along with restitution in the amount of $88.00.  *See* RR, Vol. 4, pg. 51; CR, pg. 67.  The jury's verdict was unanimous.  *See* RR, Vol. 4, pg. 251.

On June 27, 2014, the trial court signed its final judgment of

conviction. *See* CR, pgs. 71-73. Tyson timely filed his notice of appeal. *See* CR, pg. 74.

**Proceedings in this Court.**

On or about June 27th, Tyson filed his notice of appeal in this Court. The County Clerk of Lamar County filed the Clerk's Record on or about August 18, 2014. The official court reporter filed the Reporter's Record on or about September 22, 2014 along with the exhibits on or about September 26, 2014.

The appellant, Tyson, filed two (2) separate motions for extension of time to file his brief, which this Court granted on both occasions. On or about December 19th, Tyson filed his brief.

In turn, the State filed a motion for extension of time to file its brief, which this Court granted on January 21, 2015. The State will be filing its brief on February 10, 2015 to comply with this Court's ruling on January 21st.

## SUMMARY OF THE ARGUMENT

By this appeal, Tyson brings four (4) issues/points of error. This Court should overrule each of these issues/points of error and should affirm the trial court's final judgment of conviction in all respects for the following

reasons:

First, the evidence was legally-sufficient for a rational jury to find the elements of the offense of theft beyond a reasonable doubt. Second, the trial court did not abuse its broad discretion in limiting the closing arguments during the guilt-innocence phase to fifteen (15) minutes. Third, no Texas Court has held that the limitation of closing arguments to fifteen (15) minutes violates the Sixth Amendment.

Finally, this Court should order the trial court clerk (i.e. the County Clerk of Lamar County, Texas) to supplement this appellate record with a certified bill of costs. Once this Court has ordered and received this supplemental bill of costs, the evidence will be legally-sufficient to support the trial court's final judgment of conviction, which required the appellant (Tyson) to pay court costs.

## ARGUMENT AND AUTHORITIES

**ISSUE PRESENTED IN REPLY NO. 1: VIEWED IN THE LIGHT MOST FAVORABLE TO THE JURY'S VERDICT, THE EVIDENCE WAS LEGALLY SUFFICIENT FOR A RATIONAL JURY TO HAVE FOUND THE ESSENTIAL ELEMENTS OF THEFT BEYOND A REASONABLE DOUBT.**

A. **Standard of Review: Legal-Sufficiency of the Evidence.**

In evaluating legal sufficiency, this Court reviews all the evidence in

the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *See*, *e.g.*, *Vanderburg v. State*, 365 S.W.3d 712, 714 (Tex. App.--Texarkana 2012, no pet.) (Justice Carter) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) and *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.--Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). A rigorous legal sufficiency review focuses on the quality of the evidence presented. *See Wilson v. State*, 391 S.W.3d 131, 135 (Tex. App.--Texarkana 2012, no pet.) (citing *Brooks*, 323 S.W.3d at 917-18 (Cochran, J., concurring)). This Court examines legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *See Wilson*, 391 S.W.3d at 135 (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318-19)).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *See Wilson*, 391

S.W.3d at 135 (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *See Wilson*, 391 S.W.3d at 135.

B. **The State Adduced Legally-Sufficient Evidence to Support the Jury's Finding.**

With his first issue, the appellant contended that "[t]he only evidence presented at trial that Tyson actually stole items from Walmart was the testimony of Dustin Calhoun, Walmart's loss prevention officer." *See* Appellant's Brief, pg. 10. Tyson further contended that none of the allegedly ripped up packages were photographed or brought to court and introduced into evidence. *See* Appellant's Brief, pg. 11. According to Tyson, the videotape did not show Tyson or his wife ripping up packages or placing anything in their pockets, and the police officers who went into Tyson's home did not see any of the allegedly stolen items there. *See* Appellant's Brief, pg. 11. No stolen items were ever found in Tyson's possession, and his wife's testimony gives a reasonable innocent explanation for their act of running from the store. *See* Appellant's Brief, pg. 11.

However, Tyson's contentions on appeal would essentially require this Court to reweigh the credibility of the witnesses and the testimony presented at trial.[1]  However, the jury was the exclusive judge of credibility of witnesses, the weight to be given their testimony, and reconciliation of conflicts in the evidence.  *See*, *e.g.*, *Barnett v. State*, 344 S.W.3d 6, 13 (Tex. App.--Texarkana 2011, pet. ref'd) (citing *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000)).

Further, a conviction may be based on the testimony of a single eyewitness.  *See Lewis v. State*, 126 S.W.3d 572, 575 (Tex. App.--Texarkana 2004, pet. ref'd) (citing *Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971); *Pitte v. State*, 102 S.W.3d 786, 794 (Tex. App.--Texarkana 2003, no pet.)).  Because a conviction for theft may be based on the testimony of a single eyewitness, this Court should reject Tyson's legal-sufficiency argument that "[t]he only evidence presented at trial that Tyson

---

[1] *See Rickie Renarld Goodie v. The State of Texas*, No. 01-12-00531, 2013 Tex. App. LEXIS 15284, at * 7 (Tex. App.--Houston [1st Dist.] December 19, 2013, pet. ref'd) (mem. op., not designated for publication) (citing *Christopher Michael Lindgren v. The State of Texas*, No. 01-12-00083-CR, 2013 Tex. App. LEXIS 2415, 2013 WL 978257, at * 3 (Tex. App.--Houston [1st Dist.] March 12, 2013, no pet.) (mem. op., not designated for publication) (upholding theft conviction in the absence of video evidence when loss prevention officer of *HEB* store provided eyewitness testimony)).  In *Goodie*, an unpublished opinion, the court of appeals concluded that testimony from a Pearland Home Depot loss prevention officer, which was corroborated by portions of the surveillance video, provided sufficient evidence for the jury to rationally conclude beyond a reasonable doubt that the appellant took a drill without Home Depot's effective consent and left the store with the intention of depriving Home Depot of the drill.  *See id.*

-14-

actually stole items from Walmart was the testimony of Dustin Calhoun, Walmart's loss prevention officer." *See* Appellant's Brief, pg. 10.

In the present case, Calhoun provided testimony that would qualify him as an eyewitness during cross-examination, as follows:

> Q. Now, your testimony is from your vantage point wherever you are you're able to see into the buggy, correct?
>
> A. Yes.
>
> Q. Okay. Were there other things in the buggy before she put those in there?
>
> A. No.
>
> Q. So, are you watching all this?
>
> A. Yes.
>
> Q. Wherever you are, you see all this?
>
> A. I can see it all from the purses.
>
> Q. So, just to be clear, you're at a place where you can dad-gum sure see them. That's your testimony, right?
>
> A. Yes.

*See* RR, Vol. 4, pgs. 72-73.

As an eyewitness, Calhoun testified that he saw Tyson and another female selecting merchandise at a high rate of speed. *See* RR, Vol. 4, pgs. 37, 69, 75, 77. Based on his experience as a loss prevention officer, Calhoun

-15-

was on notice, and he testified in his lay opinion, that "they're probably not going to pay for it." *See* RR, Vol. 4, pg. 37. *See also* Tex. R. Evid. 701. As an eyewitness, Calhoun was also looking through a peg board, through a hole; and "[i]t shows that whole aisle." *See* RR, Vol. 4, pg. 84.

Having heard Calhoun's testimony, the jury was the exclusive judge of the credibility of the witness and the weight to be given his testimony. *See Barnett*, 344 S.W.3d at 13. Viewing all the evidence in the light most favorable to the jury's verdict, Tyson's first issue/point of error on appeal should be overruled because a conviction may be based on the testimony of a single eyewitness, like Calhoun. *See Lewis*, 126 S.W.3d at 575 (citing *Aguilar v. State*, 468 S.W.2d at 77); *Pitte*, 102 S.W.3d at 794.

**ISSUE PRESENTED IN REPLY NO. 2: THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DETERMINING THE LENGTH OF ARGUMENTS DURING THE APPELLANT'S TRIAL.**

A. **Standard of Review: Abuse of Discretion.**

The Texas Court of Criminal Appeals has held that "trial courts have broad discretion in determining the length of arguments during a trial." *See Dang v. State*, 154 S.W.3d 616, 619 (Tex. Crim. App. 2005) (citing *Hernandez v. State*, 506 S.W.2d 884, 886 (Tex Crim. App. 1974); *Robinson v. State*, 415 S.W.2d 180, 182 (Tex. Crim. App. 1967)). Of course, trial

courts have broad discretion in managing the course of a trial generally. *See*

*Dang*, 154 S.W.3d at 619 (citing Tex. R. Evid. 611). However, this

discretion is not limitless. *See Dang*, 154 S.W.3d at 619.

As explained in *Dang*, the Code of Criminal Procedure does not

provide much guidance to the trial courts regarding how long arguments can

be. *See id*. The statutory right to argue at the close of the evidence is

derived by inference from Article 36.07 and 36.08. *See id*.

In *Dang*, the Texas Court of Criminal Appeals concluded that

reviewing courts should consider, but are not limited to considering the

following non-exclusive list of factors on a case-by-case basis: (1) the

quantity of the evidence, (2) the duration of the trial, (3) conflicts in the

testimony, (4) the seriousness of the offense, (5) the complexity of the case,

(6) whether counsel used the time allotted efficiently, and (7) whether

counsel set out what issues were not discussed because of the time

limitation. *See id*. at 621.

B. **Application of Law to the Present Case.**

(1-3) **The Quantity of the Evidence, the Duration of the Trial, and Conflicts in the Testimony.**

In *Dang*, the Court of Criminal Appeals considered the first three

factors together. *See id*. In the present case, the record indicated that three

(3) witnesses testified over a one-day jury trial.  The State presented two (2) witnesses--Calhoun and Officer Duerksen--and the State proffered three exhibits, which were the "training" receipt, the surveillance video from Wal-Mart and the in-car video from Officer Duerksen.  *See* State's Exhibits 1, 2 and 3.  The defense presented one witness, Kimber Renee Tyson.  *See* RR, Vol. 4, pg. 153.  In his brief, Tyson contended that the testimony of Kimber Renee Tyson "wholly contradicted the testimony of the State's key witness." *See* Appellant's Brief, pg. 14.  But, that testimony was from an interested witness, the wife of the appellant, and the jury could have completely rejected her testimony and found the testimony to be non-conflicting.

(4-5) **Seriousness of the Offense and Complexity of the Case.**

Although Tyson admitted in his brief that "the offense in this case is relatively minor," he contended that he still faced and received jail time.  *See* Appellant's Brief, pg. 14.  However, the State charged the appellant with the Class B misdemeanor offense of theft.  *See* CR, pg. 8.  An individual adjudged guilty of a Class B misdemeanor shall be punished by:  (1) a fine not to exceed $2,000; (2) confinement in jail for a term not to exceed 180 days; or (3) both such fine and confinement.  *See* Tex. Penal Code Ann. § 12.22 (West Supp. 2014).

-18-

In deciding whether an offense is "petty," the United States Supreme Court has sought objective criteria reflecting the seriousness with which society regards the offense, *District of Columbia v. Clawans*, 300 U.S. 617, 628 (1937) and have found the most relevant such criteria in the severity of the maximum authorized penalty. *See Baldwin v. New York*, 399 U.S. 66, 68; 90 S.Ct. 1886; 26 L. Ed. 2d 437 (1970). Applying these guidelines, the United States Supreme Court has held that a possible six-month penalty is short enough to permit classification of the offense as "petty." *See id.* at 68-69.

Similarly here, a possible six-month (or 180 days) penalty for a Class B misdemeanor is short enough to permit classification of this offense as "petty." *See id*. Therefore, Tyson's misdemeanor offense of theft should not be considered "serious," regardless of the fact that he faced and received jail time of 100 days.

As for the complexity of the issues, this case was a relatively simple case involving the alleged theft of $87.91 in miscellaneous cosmetics from a Wal-Mart in Lamar County, Texas. The trial court's charge to the jury included a single application paragraph (CR, pg. 60) with definitions of "appropriate," "deprive," "owner" and "property." *See* CR, pgs. 59-60.

-19-

(6)    **Whether Counsel Used the Time Allotted Efficiently.**

As in *Dang*, 154 S.W.3d at 622, the record indicated here that counsel used his time effectively during closing argument and did not engage in improper argument.  Mr. Haslam covered relevant and contested issues from the trial and did not waste time with needless repetition.

(7)    **Whether Counsel Set Out What Issues Were Not Discussed Because of the Time Limitation.**

Unlike the case in *Dang*, Tyson did not file a motion for new trial. *See id*. at 622.  Although counsel for Tyson offered the "racial implications of this matter" as a topic that he would have covered, the trial court made clear that counsel "never asked for additional time in front of the jury." *See* RR, Vol. 4, pg. 216.  *See also* RR, Vol. 4, pg. 218.  The trial court also gave an "extra minute and a half." *See* RR, Vol. 4, pg. 217.

In applying the factors above, the trial court did not abuse its discretion in limiting the closing arguments to fifteen (15) minutes.  *See* RR, Vol. 4, pgs. 192 ("I'll give both sides 15."), 201.  *See Dang*, 154 S.W.3d at 621, n. 22 (citing, among others, *Arevalo v. State*, 835 S.W.2d 701, 707 (Tex. App.--Houston [14th Dist.] 1992, no pet.) (15 minute time limit for closing argument in a narcotics case not an abuse of discretion)).  This was a relatively-simple and "petty" misdemeanor theft case, not a serious felony

-20-

offense; and the issues were not complex over a one-day jury trial. Put simply, the factors in *Dang* predominate against a conclusion that the trial court abused its discretion. Therefore, the appellant's, Tyson's, second issue/point of error should be overruled.

**ISSUE PRESENTED IN REPLY NO. 3: THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DETERMINING THE LENGTH OF ARGUMENTS DURING THE APPELLANT'S TRIAL IN ALLEGED CONTRAVENTION OF HIS SIXTH AMENDMENT RIGHT TO COUNSEL.**

With his third issue, Tyson alleged that he was denied the exercise of his full rights under the Sixth Amendment by the trial court's unreasonable restrictions on closing argument. *See* Appellant's Brief, pg. 18 (citing *Dang*, 154 S.W.3d at 623 (Meyers, J., concurring). Other than the citation to the concurring opinion, Tyson failed to cite any other authority. *See* Tex. R. App. P. 38.1(i).

On remand, the court of appeals concluded in *Dang* that the appellant did not assert, and the Court of Criminal Appeals did not find, such a violation of the Sixth Amendment. *See Dang*, 202 S.W.3d 278, 280 (Tex. App.--Houston [14ᵗʰ Dist.] 2006, no pet.) (majority opinion on remand following rehearing). In *Dang*, the court of appeals further articulated that "[t]he high court's discussion of *Walker* in *Dang* is consistent with the rest of

-21-

the *Dang* opinion, which shows that the Court of Criminal Appeals did not find any constitutional violation. *See Dang*, 202 S.W.3d at 281. As should be the case here, this Court should not find any constitutional violation. *See id*. Therefore, the appellant's, Tyson's, second issue/point of error should be overruled.

**ISSUE PRESENTED IN REPLY NO. 4:   THIS COURT SHOULD ORDER THE SUPPLEMENTATION OF THE CLERK'S RECORD TO INCLUDE A CERTIFIED BILL OF COSTS.**

A.   **Introduction.**

With his final issue, Tyson contended that the record did not contain a certified bill of costs; therefore, the appellant cannot be made to pay costs of court. *See* Appellant's Brief, pg. 20. Again, however, Tyson failed to cite any other authority to support his appellate contention. *See* Tex. R. App. P. 38.1(i).

B.   **Assuming Error Preservation, this Court Should Order the Supplementation of the Clerk's Record.**

Chapter 103 of the Texas Code of Criminal Procedure governs the collection of costs and recordkeeping in criminal cases. *See Cardenas v. State*, 402 S.W.3d 377, 382 (Tex. App.--Houston [1ˢᵗ Dist.] 2013) (opinion on rehearing), *aff'd*, 423 S.W.3d 396 (Tex. Crim. App. 2014). In *Cardenas*, the court of appeals held that the district clerk is required to "keep a fee

-22-

record," which must contain "a statement of each fee or item of cost charged for a service rendered in a criminal action or proceeding." *See Cardenas*, 403 S.W.3d at 382-83. In *Cardenas*, the court of appeal further held that article 103.006 provided that "[i]f a criminal action . . . is appealed, an officer of the court shall certify and sign a bill of costs stating the costs that have accrued and send the bill of costs to the court to which the action or proceeding is transferred or appealed." *See Cardenas*, 403 S.W.3d at 383. In *Cardenas*, no document constituting a bill of costs had been created, certified, signed, and sent to the court of appeals by the time the appellant filed his brief, in which he objected to the sufficiency of the evidence supporting an award of costs. *See id*.

In *Cardenas*, the court of appeals reasoned that the rules of appellate procedure provide that "[a] court of appeals must not affirm or reverse a judgment or dismiss an appeal for formal defects or irregularities in appellate procedure without allowing a reasonable time to correct or amend the defects or irregularities." *See id* (citing Tex. R. App. 44.3). Further, the court of appeals reasoned that, as a court, it was specifically authorized to direct the trial court clerk to supplement the record with any relevant omitted item. *See id* (citing Tex. R. App. P. 34.5(c)(1), (3)).

In *Cardenas*, the court of appeals ordered the trial court clerk "to prepare, certify, and file a supplemental record containing a bill of costs," and in the event no bill of costs then existed, the court of appeals ordered "the trial court clerk or an officer of the court . . . to prepare a bill of costs for inclusion in the supplemental record." *See id*. In *Cardenas*, the appellant filed a written objection to the order from the court of appeals. *See id*.

The court of appeals overrule Cardenas's objections to the supplementation of the record. *See id*. at 385. The Texas Court of Criminal Appeals affirmed. *See Cardenas*, 423 S.W.3d at 397, 399.

Here, the *Cardenas* rationale should apply equally to the present case. *See Cardenas*, 403 S.W.3d at 383. In the present case, this Court must not affirm or reverse a judgment or dismiss an appeal for formal defects or irregularities in appellate procedure without allowing a reasonable time to correct or amend the defects or irregularities." *See id*; Tex. R. App. 44.3. Further, this Court is specifically authorized to direct the trial court clerk to supplement the record with any relevant omitted item. *See id*; Tex. R. App. P. 34.5(c)(1), (3).

As in *Cardenas*, this Court should order the trial court clerk (i.e. the

County Clerk of Lamar County, Texas) "to prepare, certify, and file a supplemental record containing a bill of costs," and in the event no bill of costs then existed, the court of appeals ordered "the trial court clerk or an officer of the court . . . to prepare a bill of costs for inclusion in the supplemental record." *See id.* The State prays for such relief before this Court affirms or reverses the trial court's judgment in cause number 61504. *See id.* Once this Court orders and receives a supplemental record, that contains a certified bill of costs, Tyson's final issue/point of error should be overruled because the appellate record will provide sufficient evidence to support the appellant's requirement to pay lawfully-imposed court costs.

## **PRAYER**

WHEREFORE PREMISES CONSIDERED, the State of Texas prays that upon final submission without oral argument, this Court order the trial court clerk to supplement the appellate record to include a certified bill of costs; and then affirm the trial court's final judgment of conviction, adjudge court costs against the appellant, and for such other and further relief, both at law and in equity, to which it may be justly and legally entitled.

Respectfully submitted,

Gary D. Young
Lamar County & District Attorney
Lamar County Courthouse
119 North Main
Paris, Texas   75460
(903) 737-2470
(903) 737-2455 (fax)


By:_____
       Gary D. Young, County Attorney
       SBN# 00785298

**ATTORNEYS FOR STATE OF TEXAS**

**<u>CERTIFICATE OF COMPLIANCE</u>**

Pursuant to Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure, the "Appellee's (State's) Brief" was a computer-generated document and contained 6613 words--not including the Appendix, if any.  The undersigned attorney certified that he relied on the word count of the computer program, which was used to prepare this document.


_____
GARY D. YOUNG
gyoung@co.lamar.tx.us

## CERTIFICATE OF SERVICE

This is to certify that in accordance with Tex. R. App. P. 9.5, a true copy of the "Appellee's (State's) Brief" has been served on the 10th day of February, 2015 upon the following:

Don Biard
McLaughlin Hutchison & Biard LLP
38 First Northwest
Paris, TX   75460

_____
GARY D. YOUNG